2005 SD 66

**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Marty MULLER, Defendant and Appellee.**

No. 23360.

Supreme Court of South Dakota.

Argued April 27, 2005.

Decided June 1, 2005.

Lawrence E. Long, Attorney General, Sherri Sundem Wald, Assistant Attorney General, Pierre, SD, for plaintiff and appellant.

Scott R. Bratland of Austin, Hinderaker, Hopper, Strait & Bratland, Watertown, SD, for defendant and appellee.

GILBERTSON, Chief Justice.

[¶ 1.] Defendant moved to suppress all evidence obtained during a traffic stop in Watertown, South Dakota. Defendant alleged the traffic stop was in violation of his Fourth Amendment rights, as the officer's stop was based on erroneous information relayed by the Watertown police dispatch alleging Defendant's license plates were expired. As a consequence of the traffic stop, Defendant was arrested on suspicion of driving under the influence and driving under revocation. During the traffic stop, Defendant alleged he had renewed his license plates in Milbank, South Dakota. After a hearing on the motion to suppress, the trial court held that a traffic stop and subsequent arrest are invalid when an arresting officer acts upon information in records, which, though correct when put into records, has been erroneously retained in records through the fault of the State record keeping agency.

[¶ 2.] We reverse.

### FACTS AND PROCEDURE

[¶ 3.] On November 22, 2003, at approximately 1:42 a.m., Marty Muller (Defendant) was observed driving a yellow Firebird in Watertown, South Dakota, by city police officer Tim Toomey. Officer Toomey's attention was drawn to Defendant's vehicle because of a loud exhaust system and because it was traveling ten miles per hour on snow packed roads. Of-

ficer Toomey followed Defendant's vehicle and observed it make several turns, traveling northbound, then westbound, turning southbound and westbound again. The license plate on Defendant's vehicle was covered with snow that obscured the lower half of the plate where current registration stickers are normally located. However, Officer Toomey was able to see the numbers on the plate and initiated a license plate check. Officer Toomey was informed by the Watertown police dispatch that the license plate had expired in March 2003.

[¶ 4.] Based on this information, Officer Toomey initiated a traffic stop by engaging the vehicle stop lights on his patrol car. Defendant's vehicle traveled one block to Third Street, turned northbound and turned into a parking lot before stopping. Once the vehicle stopped, Officer Toomey approached Defendant's vehicle and wiped the snow off of the license plate and found a registration sticker that appeared to be current and valid.

[¶ 5.] Officer Toomey then approached Defendant's driver side window in order to explain why he had initiated the traffic stop. When Officer Toomey made eye contact with Defendant, he immediately noticed Defendant's eyes were blood shot. As Officer Toomey leaned down to speak with Defendant in his vehicle, he noted an odor of an alcoholic beverage emanating from Defendant's vehicle.

[¶ 6.] Defendant was asked for his driver's license, but was able to produce only a South Dakota identification card. Defendant stated he had no other identification with him. Defendant was also unable to produce proof of registration, but was able to produce an expired insurance card. During the conversation, Officer Toomey observed Defendant's actions were slow, and his speech was slurred.

[¶ 7.] Officer Toomey then asked Defendant to come back to the patrol car in order to determine why Defendant's plates were coming back as expired. As Defendant walked toward the patrol car, he was staggering. Once in the patrol car, Officer Toomey noted an odor of alcoholic beverage on Defendant's breath as he spoke. Officer Toomey requested a driver's license check on Defendant, and was told by dispatch that Defendant's license was revoked. Defendant alleged he had renewed his plates in Milbank, South Dakota, but was unable to produce a current registration.

[¶ 8.] Based on Officer Toomey's observations of Defendant's slurred speech, staggering, and the odor of alcohol on Defendant's breath, additional officers were called to the scene to assist with field sobriety tests. Defendant was charged with driving under the influence under SDCL 32–23–1, and driving under revocation under SDCL 32–12–65(1). The State gave Defendant notice via a Part II Information that it intended to seek revocation of driving privileges under SDCL 32–23–4 for a third DUI offense.

[¶ 9.] At a motion to suppress hearing, Officer Toomey testified he pulled Defendant over based on the expired plate check, and not because the license plate was partially obscured by snow or because of the loud exhaust. Officer Toomey testified he was still uncertain why Defendant's license plates had come back as expired when Defendant had what appeared to be a current registration sticker displayed on the plates. Officer Toomey testified that he had never encountered a situation where a license plate check came back as expired and the vehicle had what appeared to be a valid sticker displayed on the license plate. Officer Toomey also testified he had dispatch run the registration in addition to the plate, and the registration still came back expired. Finally, Officer Toomey testified he did not know whether

or not the registration sticker was valid, only that it appeared valid to him and that the dispatch report he obtained after the arrest still indicated expired plates.

[¶ 10.] The trial court found that Officer Toomey's traffic stop was based on the information provided by police dispatch. In its conclusions of law, the trial court held the Watertown police dispatch office is an agency of the State of South Dakota. The trial court also held the computer inaccuracy, even if unintended, amounted to a capricious disregard for the rights of Defendant. The trial court held a stop and subsequent arrest are invalid when an officer acts upon information in records, which though correct when put into records, no longer applies and which through the fault of the system, has been retained in the records. Finally, the trial court held the stop of Defendant's vehicle was a violation of Defendant's constitutional and statutory rights and entered an order suppressing all evidence obtained during the traffic stop.

[¶ 11.] The State's motion to reconsider was denied by the trial court. The State raises one issue on appeal:

**The trial court erred by granting Defendant's motion to suppress evidence.**

## STANDARD OF REVIEW

[¶ 12.] We traditionally review a trial court's decision to suppress evidence under an abuse of discretion standard. *State v. Wilson,* 2000 SD 133, ¶ 7, 618 N.W.2d 513, 516 (citing *State v. Durke,* 1999 SD 39, ¶ 11, 593 N.W.2d 407, 409). However, a trial court's decision based on an error of law can be by definition an abuse of discretion. *State v. Vento,* 1999 SD 158, ¶ 5, 604 N.W.2d 468, 469. "Our review of a motion to suppress based on an alleged violation of a constitutionally protected right is a question of law examined de novo." *State v. Stanga,* 2000 SD 129,

¶ 8, 617 N.W.2d 486, 488 (citing *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, 920 (1996) (proper standard of review of Fourth Amendment challenges is de novo); *United States v. Khan,* 993 F.2d 1368, 1375 (9th Cir.1993); *State v. Hirning,* 1999 SD 53, ¶ 9, 592 N.W.2d 600, 603.) "The existence of reasonable suspicion is a question of law which is fully reviewable by this Court" under the de novo standard of review. *State v. Herrboldt,* 1999 SD 55, ¶ 7, 593 N.W.2d 805, 807 (quoting *State v. Lownes,* 499 N.W.2d 896, 898 (S.D.1993)).

## ANALYSIS AND DECISION

[¶ 13.] **The trial court erred by granting Defendant's motion to suppress evidence.**

[¶ 14.] The text of the Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

US Const. amend. IV. The Fourth Amendment's prohibition against unreasonable searches and seizures applies when a vehicle is stopped by law enforcement. *Vento,* 1999 SD 158, ¶ 8, 604 N.W.2d at 470 (citing *State v. Richards,* 1998 SD 128, ¶ 11, 588 N.W.2d 594, 596 (citing *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979))). An officer is required to have a "specific and articulate suspicion of a violation before an automobile stop will be justified" under the Fourth Amendment. *Id.* (quoting *State v. Cuny,* 534 N.W.2d 52, 53 (S.D.1995)). The standard for determining whether a factual

basis existed for the traffic stop is as follows:

> While the stop may not be the product of mere whim, caprice or idle curiosity, it is enough that the stop is based upon "specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant the intrusion." *State v. Herrboldt,* 1999 SD 55, ¶ 7, 593 N.W.2d 805, 808 (quoting *Spenner v. City of Sioux Falls,* 1998 SD 56, ¶ 14, 580 N.W.2d 606, 611). Under these standards, *it is well established that a traffic violation, however minor, creates sufficient cause to stop the driver of a vehicle." Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89, 95–[96] (1996); *State v. Kenyon,* 2002 SD 111, ¶ 16, 651 N.W.2d 269, 274.

*State v. Akuba,* 2004 SD 94, ¶ 15, 686 N.W.2d 406, 413 (quoting *State v. Chavez,* 2003 SD 93, ¶ 16, 668 N.W.2d 89, 95).

[¶ 15.] We have previously held that an officer's subjective beliefs about a mistake of law, or his intentions, cannot invalidate a stop, as long as the circumstances of the stop, when viewed objectively, justified the action. *Vento,* 1999 SD 158, ¶ 11, 604 N.W.2d at 470 (citing *Whren,* 517 U.S. at 813, 116 S.Ct. at 1774, 135 L.Ed.2d at 98; *Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168, 177 (1978); *United States v. Cummins,* 920 F.2d 498, 501 (8th Cir.1990)). We have also held the opposite to be true: if an officer unreasonably, subjectively, and mistakenly, believes that a motorist has violated a traffic law, there is no reasonable articulable suspicion sufficient to uphold a search under the Fourth Amendment. *Webb v. South Dakota Dept. of Commerce and Regulation,* 2004 SD 63, ¶ 10, 680 N.W.2d 661, 665.

■ [¶ 16.] "[A] reasonable investigation of a traffic stop may include asking for the driver's license and registration, requesting the driver to sit in the patrol car, and asking the driver about his destination and purpose." *Akuba,* 2004 SD 94, ¶ 20, 686 N.W.2d at 415 (citing *United States v. Ramos,* 42 F.3d 1160, 1163 (8th Cir.1994)). As long as the officer "still has some 'objectively reasonable articulable suspicion' that a traffic violation 'has occurred or is occurring[,]'" an officer's request of a driver's license and registration will be reasonably related in scope to the circumstances that justified the stop in the first place. *United States v. McSwain,* 29 F.3d 558, 561 (citing *United States v. Soto,* 988 F.2d 1548, 1554 (10th Cir.1993) (speeding); *United States v. Trimble,* 986 F.2d 394 (10th Cir.1993) (expired license plate); *United States v. Rivera,* 867 F.2d 1261, 1263 (10th Cir.1989) (tailgating); *United States v. Guzman,* 864 F.2d 1512, 1519 (10th Cir1988) (seat belt violation)).

[¶ 17.] In the instant case, Officer Toomey relied on the information relayed to him by the Watertown police dispatch, that Defendant's plates and registration were expired. The question at the motion to suppress became: was it reasonable for a police officer to rely on erroneous information transmitted by police dispatch?[1] The trial court answered this question in the negative, asserting that the inaccurate information maintained in the State's computerized vehicle registration system could be imputed to Officer Toomey because the Watertown police dispatch is an agency of the State. The trial court further held that "[a] computer inaccuracy, even if

---

1. The Codington County State's Attorney did not submit a brief in opposition to the motion to suppress, nor did he object to the trial court's proposed findings of fact and conclusions of law, or submit his own. Therefore, the State is precluded from arguing on appeal that Defendant's vehicle registration and sticker were not valid.

unintended, of this nature amounts to a capricious disregard for the rights of the Defendant as a citizen of the United States."

[¶ 18.] This is an issue of first impression in South Dakota. Other jurisdictions that have addressed the issue include New York, the United States District Court for the District of Nevada, Iowa and Vermont. The issue turns in these jurisdictions on whether law enforcement maintains the computer database from which the erroneous data was retrieved.[2]

[¶ 19.] In *People v. Jennings*, 54 N.Y.2d 518, 446 N.Y.S.2d 229, 430 N.E.2d 1282 (1981), the defendant was pulled over by a Hempstead city police officer for traffic violations and subsequently arrested when a standard warrant check indicated an outstanding warrant, which was later found to be invalid. The outstanding warrant was valid when entered into the New York State Identification and Intelligence System,[3] and the National Crime Information Center (NCIC)[4] databases. *Id.* at 521, 446 N.Y.S.2d 229, 430 N.E.2d 1282. However, the warrant had been executed nine months prior and vacated four months prior to the traffic stop, but not purged from either database. *Id.* The court in that case held the arrest was invalid and all evidence obtained as a result was suppressed as poisoned fruits of

the unlawful arrest. *Id.* at 523, 446 N.Y.S.2d 229, 430 N.E.2d 1282. That court relied on the rationale of the "fellow officer" rule in *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306, that an officer may rely on information communicated to him by another officer in making an arrest, but if "the warrant turns out to be invalid, any evidence seized as a result of the arrest will be suppressed notwithstanding the reasonableness of the arresting officers reliance upon the communication." *Id.* at 522, 446 N.Y.S.2d 229, 430 N.E.2d 1282 (citing *Whiteley*, 401 U.S. at 568, 91 S.Ct. at 1037, 28 L.Ed.2d at 313).

[¶ 20.] In *People v. McElhaney*, 146 Misc.2d 748, 552 N.Y.S.2d 825, 826 (N.Y.Sup.Ct.1990), a stolen car alarm was entered into a computer system upon receipt of a report of the vehicle's theft by the owner. The car was subsequently recovered by the New York City police, and the owner obtained a written release from a New York County assistant district attorney and retrieved her vehicle. *Id.* At the time of the retrieval, police at the impound lot were unable to remove the stolen car alarm from their computer system, but nevertheless allowed the owner to leave with the vehicle. *Id.* The next day, a police officer spotted the car in a hotel parking lot, ran the plates and was advised it was listed as a stolen car. *Id.* When the

---

2. The State is precluded from arguing the good faith exception to the reasonable suspicion requirement on appeal, as it failed to present it to the trial court. *State v. Eidahl*, 495 N.W.2d 91, 94 (S.D.1993). We leave that issue for another day.

3. The New York State Identification and Intelligence System is a database system maintained by the New York Division of Criminal Justice Services, which contains criminal records, personal appearance data, fingerprints, photographs, and handwriting samples collected and submitted by qualified law enforce-

ment agencies and the judicial system. NY Executive Law § 837 (McKinney 2003).

4. The National Crime Information Center is under the authority of the Federal Bureau of Investigation, and is a collection of identification, criminal identification, crime and other records submitted by and exchanged with authorized officials of federal, state, and municipal law enforcement agencies and penal institutions. *United States v. Mackey*, 387 F.Supp. 1121, 1123 (D.Nev.1975). Each contributing agency is responsible for verifying the accuracy of their data. *Id.* at 1123.

owner attempted to leave with the car, she was arrested and a gun was found in her handbag. *Id.* The court in that case held there was no probable cause for the arrest and suppressed the handgun evidence. *Id.* at 827. That court relying on the "fellow officer" rule in *Jennings,* 54 N.Y.2d 518, 446 N.Y.S.2d 229, 430 N.E.2d 1282, noted the police had engaged in "inexcusable neglect [that] jeopardized the liberty of a crime victim" by failing to either update the police department's computer records immediately or by not releasing the car to the owner until the record could be updated. *Id.*

[¶ 21.] In *United States v. Mackey,* 387 F.Supp. 1121 (D.Nev.1975), an arrest was held invalid and evidence suppressed after information relayed from California law enforcement through the NCIC and received by a Las Vegas police officer was found to be in error. The information in that case was false, in that the warrant for the defendant's arrest had been complied with five months prior to the arrest. *Id.* at 1122. That court noted that the information contained in the NCIC database is the property of the various law enforcement agencies which submit data to the system. *Id.* at 1123. That court noted that the inaccurate information could result in the defendant's arrest, booking, search and detention at any time by a routine check by the police. *Id.* at 1124.

[¶ 22.] The jurisdictions of Iowa and Vermont have reviewed the issue of whether incorrect information provided by the department of motor vehicles, or some other similar state agency, is chargeable to law enforcement agencies under the "fellow officer" or collective knowledge theory. In *State v. Ewoldt,* 448 N.W.2d 676 (Iowa Ct.App.1989), police officers requested both an automatic and a manual check of the driver's license of the defendant, who the officers personally knew had recently been arrested for operating while intoxicated, as the officers suspected the individual was driving while under revocation. The license check came back as revoked, and Ewoldt was stopped for the offense of driving under a revoked license. *Id.* at 677. During the traffic stop the officers noted signs of intoxication and administered field sobriety tests, some of which Ewoldt failed. *Id.* Ewoldt submitted to an intoxilyzer test that indicated an alcohol concentration of .143. *Id.* After the arrest, the computer data relied upon by the arresting officers was proved to be incorrect, in that Ewoldt's revocation was scheduled to take effect thirty days after the traffic stop took place. *Id.* Therefore, Ewoldt was not driving on a revoked license at the time of the traffic stop and subsequent arrest. *Id.* Ewoldt challenged the stop, contending the inaccuracy of the Department of Transportation driver's license records should be imputed to the police officers who stopped him, thereby invalidating the stop for lack of reasonable suspicion. *Id.* Driver's license records are maintained in Iowa by the Department of Transportation. *Id.* at 678. Iowa courts are required to provide the Department with OWI conviction records, thus making the Department the central repository for all license information. *Id.* That court noted that a mistaken basis for a stop will not necessarily invalidate the stop, as long as reasonable suspicion is based on articulable facts from a reasonably trustworthy source of information. *Id.* (citing *State v. Morris,* 227 N.W.2d 150, 152 (Iowa 1975)). The court held that the officers based their stop on information compiled by the Department of Transportation and did not know, and could not reasonably be expected to have known, that the information was inaccurate. *Id.* The stop was upheld and the evidence obtained was held to be admissible. *Id.*

[¶ 23.] Similarly in *State v. Lanoue*, 156 Vt. 35, 587 A.2d 405 (1991), an officer believed Lanoue's right to operate a motor vehicle was under suspension, and initiated a driver's license check through the Department of Motor Vehicles computer database. The information provided by the computer database verified that Lanoue's license was under suspension. *Id.* at 406. The information in the Department of Motor Vehicles system was later found to be incorrect. *Id.* Although Lanoue's right to operate had been suspended on August 13, 1987, it was reinstated at 12:01 a.m. on September 17, 1987, forty-five minutes before the traffic stop, but was not transferred to the Department of Motor Vehicles computer until after the stop had been made. *Id.* That court held that the incorrect information provided by the Department of Motor Vehicles was not chargeable to a law enforcement agency for the same reasons used by the Iowa court in *Ewoldt*, 448 N.W.2d 676, that is, the Department of Motor Vehicles is entrusted by statute to record and maintain driver's license records, and is an official source of such information that is independent of law enforcement agencies. *Id.* at 407.

[¶ 24.] *Jennings*; *McElhaney* and *Mackey* are distinguishable from the instant case, in that the database relied upon by Officer Toomey was not maintained and updated by the Watertown Police Department itself, or by another law enforcement agency. Instead, the motor vehicle registration database is maintained by the South Dakota Department of Revenue and Regulation, which is charged with the duty of performing all "functions, duties, and services with respect to the registration and licensing of motor vehicles . . . ." SDCL 32–1–3. The registration application process and collection of fees is conducted by the county treasurer of the vehicle owner's county of residence, and fees and information are submitted to the Department of Revenue and Regulation. SDCL 32–1–6 and 32–5–2. The South Dakota Department of Revenue and Regulation and the county treasurers are independent of law enforcement agencies.

[¶ 25.] Officer Toomey had a reasonable and objective belief that Defendant might be driving with expired plates upon observing the vehicle and its partially covered license plate. Officer Toomey obtained information through police dispatch from the Department of Revenue and Regulation registration database that indicated Defendant's plates were expired, which gave him a reasonable and objective belief that Defendant was driving with expired plates. Even after observing what Officer Toomey subjectively believed to be a valid renewal sticker, he was objectively justified in proceeding with the traffic stop based on his observation and the fact that he had never received incorrect vehicle registration information through dispatch from the Department of Revenue and Regulation. It is objectively reasonable for an officer to further investigate the inconsistency between a visual inspection of a registration sticker and information obtained from computerized records maintained by a separate and trustworthy state agency when the officer has never before received incorrect information from that agency.[5]

---

5. We have never had a case before us where the vehicle registration records maintained by the Department of Revenue and Regulation were alleged to be in error. This is not to say that such an occurrence is impossible. Our holding today should not be interpreted as condoning sloppy record keeping by any state agency charged with maintaining computerized databases, as allowing erroneous information to be used as a basis for traffic stops, or arrests, provides no incentive for state agencies to exercise the level of care necessary to ensure accuracy and trustworthiness.

[¶ 26.] Officer Toomey did not exceed the limits of a lawful investigative detention in violation of the Fourth Amendment, as he was conducting a brief investigatory stop to determine if Defendant was driving with expired plates. Officer Toomey was within the scope of the original stop when he asked for Defendant's driver's license, registration and insurance coverage information, and when Toomey asked Defendant to accompany him to and sit in the patrol car during the investigation. Evidence of Defendant's intoxication and driving with a revoked license was obtained during the scope of a proper investigatory stop, and is thus admissible at trial on the charges of driving under the influence and driving under revocation.

[¶ 27.]   Reversed.

[¶ 28.]   SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.