#24549-a-JKM

**2008 SD 41**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellant,

    v.

WADE DUSTIN HAYEN,                    Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE GLEN A. SEVERSON
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

ANDREW KNECHT
CRAIG M. EICHSTADT
Assistant Attorneys General                    Attorneys for plaintiff
Pierre, South Dakota                                   and appellant.

RONALD A. PARSONS, JR.
BRENDAN V. JOHNSON
KIMBERLY J. LANHAM of
Johnson, Heidepriem, Janklow,
  Abdallah & Johnson, LLP                    Attorneys for defendant
Sioux Falls, South Dakota                         and appellee.

\* \* \* \*

ARGUED ON MARCH 27, 2008

OPINION FILED **06/04/08**

#24549

MEIERHENRY, Justice

[¶1.] The State of South Dakota appeals from a circuit court order suppressing evidence obtained from a traffic stop on a main thoroughfare in Sioux Falls, Minnehaha County, South Dakota. A Sioux Falls police officer, Officer Flogstad, stopped Wade Hayen because he was unable to see the expiration date on the bottom of the temporary thirty-day dealer's license. The temporary license was properly positioned and displayed on the rear driver's side window of Hayen's new pickup truck; however, a box in the back of the pickup obstructed the bottom of the license preventing the officer from seeing the expiration date from his position in the driver's seat of the patrol car as he followed Hayen's pickup.

[¶2.] After the stop, the officer approached Hayen's vehicle on the driver's side. He walked by the license without checking the expiration date. Had the officer looked, he could easily have read the expiration date as he walked from his vehicle to the driver's side window. Nothing blocked his view, including the box that had previously prevented him from reading the date while following Hayen in his patrol car. Instead, the officer went directly to the driver-side window and asked for Hayen's driver's license and proof of insurance. Hayen provided his driver's license but had difficulty locating his proof of insurance. Only after this initial contact, did the officer step back to look at the expiration date on the temporary license and determine it to be valid.

[¶3.] After ascertaining the validity of the temporary license, the officer continued to detain Hayen while he returned to his patrol vehicle to run a warrant and a driver's license check. The warrant check revealed an outstanding warrant

for Hayen's arrest. The officer then arrested Hayen and proceeded to search his person and vehicle. He found methamphetamine residue and drug paraphernalia in Hayen's coat pocket. As a result, the State charged Hayen with possession of a controlled drug or substance and possession of drug paraphernalia.

[¶4.] Hayen moved to suppress the evidence gained from the search as a violation of his rights against unreasonable search and seizure guaranteed under the United States and South Dakota Constitutions. US Const amend IV; SD Const art VI, § 11. *See* State v. Meyer, 1998 SD 122, ¶18, 587 NW2d 719, 723 (noting that South Dakota Constitution and the United States Constitution provide similar protections against unreasonable searches and seizures). The circuit court granted Hayen's motion to suppress because "at the time that Officer Flogstad asked for [Hayen's] license and proof of insurance, there was no objective evidence that a traffic violation had occurred or was occurring."

[¶5.] The State claims the circuit court erred in suppressing the evidence. "Our review of a motion to suppress based on an alleged violation of a constitutionally protected right is a question of law examined de novo." State v. Muller, 2005 SD 66, ¶12, 698 NW2d 285, 288 (citations omitted). The Fourth Amendment to the United States Constitution provides protection against "unreasonable searches and seizure." The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

US Const amend IV. "The Fourth Amendment's prohibition against unreasonable searches and seizures applies when a vehicle is stopped by law enforcement." *Muller*, 2005 SD 66, ¶14, 698 NW2d at 288 (citations omitted). We have recognized that the Fourth Amendment permits a brief investigatory stop of a vehicle when "the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" State v. Kenyon, 2002 SD 111, ¶14, 651 NW2d 269, 273 (citations omitted). However, prior to stopping a vehicle, the officer is required to have an objective "specific and articulable suspicion" that a violation has occurred or is occurring. State v. Vento, 1999 SD 158, ¶8, 604 NW 468, 470; *see also Muller,* 2005 SD 66, ¶14, 698 NW2d at 288 (citations omitted).

[¶6.]        Hayen does not dispute that the officer had reasonable articulable suspicion to stop his vehicle. Additionally, the State does not dispute that the officer failed to verify the expiration date on the temporary license before asking Hayen for his license and proof of insurance. The issue is whether extending Hayen's detention beyond verifying the expiration date on the clearly displayed temporary license is a violation of Hayen's constitutional right against unreasonable search and seizure. The State argues that when an officer effectuates a valid investigatory stop, it is not unreasonable for the officer first to approach the driver to request a driver's license and proof of insurance before investigating his suspicions.

[¶7.]        We have said that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the *least intrusive means* reasonably

available to *verify or dispel* the officer's suspicion in a short period of time." State v. Ballard, 2000 SD 134, ¶11, 617 NW2d 837, 841 (emphasis added) (quoting Florida v. Royer, 460 US 491, 500, 103 SCt 1319, 1325-26, 75 LEd2d 229, 238 (1983) (citations omitted)). We also required that the investigation be "'reasonably related in scope to the circumstances that justified the interference in the first place.'" *Id.* (quoting United States v. Bloomfield*,* 40 F3d 910, 915 (8thCir 1994) (quoting United States v. Cummins, 920 F2d 498, 502 (8thCir 1990) (quoting Terry v. Ohio, 392 US 1, 20, 88 SCt 1868, 1879, 20 LEd2d 889 (1968)))). We said additionally that after the completion of the traffic investigation "an officer must allow the driver to proceed without further constraint. To detain a driver further an officer must have 'a reasonable, articulable suspicion that [the] person is involved in criminal activity unrelated to the traffic violation.'" *Id.* ¶12, 617 NW2d at 841 (internal and external citations omitted). Likewise, the Eighth Circuit Court of Appeals has stated that the Fourth Amendment intrusion "'must be temporary and last no longer than is necessary to effectuate the purpose of the stop' and that the officer should employ the least intrusive means available to dispel the officer's suspicion in a timely fashion." United States v. Jones, 269 F3d 919, 924 (8thCir 2001) (citation omitted).

[¶8.]        The officer testified that the sole purpose of stopping Hayen was to ensure the temporary license had not expired. The circuit court found that "[t]he temporary license was visible as Officer Flogstad approached the vehicle and was valid." The officer testified that he did not look at the date on the license as he walked passed it, even though the license was visible without having to move any objects in the back of the pickup. Only after requesting Hayen's driver's license and

proof of insurance, did he read the expiration date clearly visible on the license. The officer gave no explanation why he did not look at the license on the way to the driver's door, nor did he offer any other reason to extend his investigation beyond verifying the date on the temporary license. The officer conceded at the hearing that Hayen's temporary license was valid, visible and properly affixed to Hayen's vehicle. The fact that a box obstructed the officer's view from a certain angle is not a violation of any South Dakota traffic law. The officer offered no reason to detain Hayen except to verify the expiration date.

[¶9.] Whether an articulable purpose exists for continuing an investigative detention depends entirely on the specific facts of the case. The State cites several federal cases for the proposition that an officer is entitled to extend an investigative detention despite clearly objective facts dispelling the purpose of the stop. The cases cited by the State are easily distinguishable from the current facts and are inapposite. In those cases, a traffic violation had occurred, was occurring or the officer had objective reasonable articulable suspicion that a violation had occurred or was occurring that permitted the continued investigative detention. *E.g.* United States v. Bueno*, 443 F3d 1017, 1024-25 (8thCir 2006) (stating the court "credit[s] the district court's finding that the officers could not see the temporary registration" as adding to the reasonableness of the investigative detention, and the officer cited the defendant for the violation); United States v. Dumas, 94 F3d 286, 290 (7thCir 1996) (temporary tags were "illegible" and could not be "readily and distinctly seen and read" constituting a violation of the law); United States v. Dexter, 165 F3d 1120 (7thCir 1999) (same facts as *Dumas,* here the court also addressed the officer's

reasonable safety concerns which prevented him from investigating the actual violation prior to talking to the driver); *United States v. Tipton*, 3 F3d 1119 (7thCir 1993) (temporary tags were not affixed properly constituting a violation of Illinois law); *United States v. Chevez Loya*, 2007 WL 700991 (DNeb Feb 28, 2007) (valid traffic stop with clearly articulated objective reasonable suspicion which had not dissipated).

[¶10.] Likewise, the State relies on three of our prior cases: *State v Muller,* 2005 SD 66, 698 NW2d 285, *State v. Kenyon,* 2002 SD 111, 651 NW2d 269 and *State v. Vento*, 1999 SD 158, 604 NW 468. Again, these cases are distinguishable and inapposite. *Muller* involved an objectively reasonable stop based on the officer's observation that the license plate's registration sticker was covered in snow and the dispatcher's confirmation that the registration had expired. Even though the police dispatcher erroneously informed the officer that the plate had expired, the officer immediately observed the smell of alcohol emanating from the vehicle as well as the defendant's blood shot eyes. These observations created reasonable suspicion for further detention. *Muller,* 2005 SD 66, ¶25-26, 698 NW2d at 292-93. In *Kenyon,* the detention involved an actual traffic violation for failing to display red taillights as well as objectively reasonable suspicion articulated for the continued detention. 2002 SD 111, 651 NW2d 269. In *Vento,* there was also an objective violation of a traffic law. 1999 SD 158, ¶11, 604 NW2d at 470.

[¶11.] The facts of *United States v. McSwain*, a Tenth Circuit Court of Appeals case, parallel those of this case. 29 F3d 558 (10thCir 1994). In *McSwain*, a Utah trooper stopped McSwain because tamper-proofing tape inhibited his ability to

read the expiration sticker of the vehicle's temporary license. As the trooper walked up to the vehicle, he observed that the license was valid; nonetheless, the trooper continued to request McSwain's identification and vehicle registration. McSwain provided the trooper with a Colorado registration in his name but he informed the trooper that he did not have a driver's license. After running McSwain's name through a computer check, the trooper learned that McSwain had a suspended license and had been convicted of drug, gun and assault violations. The trooper then requested permission to search the vehicle and McSwain consented. The search turned up a gun, drugs and a set of scales.

[¶12.] McSwain moved to suppress the evidence as "the fruit of an unlawful detention." *Id.* at 560. The trial court denied the motion; however, the appellate court reversed the order and suppressed the evidence, holding:

> Trooper Avery's reasonable suspicion regarding the validity of Mr. McSwain's temporary registration sticker was completely dispelled *prior* to the time he questioned Mr. McSwain and requested documentation. Having no "objectively reasonable articulable suspicion that illegal activity ha[d] occurred or [was] occurring," Trooper Avery's actions in questioning Mr. McSwain and requesting his license and registration exceeded the limits of a lawful investigative detention and violated the Fourth Amendment.

*Id.* at 561-62 (citations omitted). The government in *McSwain* argued "that not allowing an officer to request a driver's license and registration in this type of case will require the officer to 'stop a vehicle, approach the vehicle on foot, observe it, then walk away, get in his police car, drive away and wave, leaving the stopped citizen to wonder what had just occurred.'" *Id.* at 562 (citation omitted). The court responded that "[a]s a matter of courtesy, the officer could explain to drivers in Mr.

McSwain's circumstances the reason for the initial detention and then allow them to continue on their way without asking them to produce their driver's license and registration." *Id.*

[¶13.] Here, like in *McSwain,* the officer's actions in requesting Hayen's license and proof of insurance went beyond the limits of a lawful investigative stop. The officer could easily have looked at the license to satisfy his suspicions. Had he done so, it would have been clear that no violation had occurred or was occurring. At that point, his reason for detaining Hayen would have dissipated. He expressed no safety concern, he did not allege any observed violation of law, nor did he proffer *any* purpose for the continued stop. Without any further articulable suspicion of criminal activity, the extended detention violated Hayen's federal and state constitutional rights. Although there certainly are situations where an officer is permitted to make contact with the driver prior to investigating the purpose of the investigatory stop, in this situation there were none articulated. Therefore, the officer's request for Hayen's driver's license and proof of insurance constituted an unconstitutional detention and the evidence garnered from the unlawful detention was properly suppressed.

[¶14.] Affirmed.

[¶15.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.