#24817-r-JKM

**2008 SD 128**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,            Plaintiff and Appellee,

      v.

MARCUS J. SUHN,            Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE VINCENT A. FOLEY
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

ANN C. MEYER
Assistant Attorney General          Attorneys for plaintiff
Pierre, South Dakota          and appellee.

ROBERT G. FITE of
Fite & Pierce Law Office          Attorneys for defendant
Brookings, South Dakota          and appellant.

\* \* \* \*

ARGUED ON SEPTEMBER 29, 2008

OPINION FILED **12/30/08**

MEIERHENRY, Justice

[¶1.]        In a trial to the court, Marcus J. Suhn was convicted of disorderly conduct for yelling profanities at a passing police car in Brookings, South Dakota. He appeals his conviction and contends that his utterances are protected speech under the First and Fourteenth Amendments to the United States Constitution. The State argues that Suhn's utterances fall under the "fighting words" exception to First Amendment protection. We hold that Suhn's words are protected speech and reverse.

## FACTS

[¶2.]        Suhn's utterances occurred on September 2, 2007, at approximately 2:00 a.m. in Brookings, South Dakota. The bars on Brookings' Main Avenue had just closed, and the bar patrons were gathering on the sidewalks outside the bars. Suhn was among an estimated 100 people gathered on the sidewalk. At this same time, two Brookings' police officers patrolled Main Avenue in their vehicle. Officer David Gibson sat on the passenger seat of the vehicle. He had his window fully open as the vehicle approached the area where the sidewalk crowd was gathered.

[¶3.]        As the patrol car passed the sidewalk crowd, Gibson heard Suhn yell obscenities in the direction of the police car. Specifically, Suhn yelled: "Fucking cop, piece of shit. You fucking cops suck. Cops are a bunch of fucking assholes." Officer Gibson leaned out of the window of the police car and made eye contact with Suhn. He identified Suhn as the speaker. Gibson also observed that the others on the sidewalk had expressions of "what are you doing?" in response to Suhn's comments.

#24817

[¶4.]     Officer Gibson immediately left the patrol car and walked toward Suhn, who was then standing with his back to the patrol car. The officer grabbed Suhn by the arm and arrested him for his earlier utterance. Suhn was charged and convicted of disorderly conduct. Suhn appeals, raising one issue:

> **Whether the circuit court's application of the disorderly conduct statute to Suhn's utterances amounted to an abridgement of speech in violation of the First Amendment.**

### ANALYSIS

[¶5.]     The State charged Suhn with disorderly conduct under SDCL 22-18-35 (2). The relevant portion of the statute provides that "[a]ny person who intentionally causes serious public inconvenience, annoyance, or alarm to any other person, or creates a risk thereof by: . . . (2) *Making unreasonable noise*; . . . is guilty of disorderly conduct." *Id.* (emphasis added). Suhn asserts that his disorderly conduct conviction violates his right to free speech under the First Amendment to the United States Constitution.[1] We review alleged violations of constitutional rights de novo. State v. Hayen, 2008 SD 41, ¶5, 751 NW2d 306, 308 (quoting State v. Muller, 2005 SD 66, ¶12, 698 NW2d 285, 288). The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." US Const amend I; amend XIV (imposing the right of free speech on the states). Emphasizing its importance, we have said that "[f]reedom of speech is one of our most cherished and zealously guarded Constitutional liberties." State v. Martin, 2003 SD 153, ¶17, 674 NW2d 291, 297.

---

1.     Suhn did not challenge the constitutionality of the statute, only its application.

#24817

*Fighting Words Unprotected by First Amendment*

[¶6.]　　　　In *Chaplinsky v. New Hampshire*, the United States Supreme Court determined that First Amendment protection does not extend to all speech. 315 US 568, 571-72, 62 SCt 766, 769, 86 LEd 1031 (1942). Unprotected speech "include[s] the lewd and obscene, the profane, the libelous, and the insulting or *'fighting' words-those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.*"[2] *Id.* at 572, 62 SCt at 769, 86 LEd 1031 (emphasis added). The Court said that these "well-defined and narrowly limited classes of speech" need not be afforded the same protection as other speech. *Id.* at 571-72, 62 SCt at 769, 86 LEd 1031. The Supreme Court reasoned that "such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Id.* at 572, 62 SCt at 769, 86 LEd 1031 (citations omitted). The Court upheld the challenged New Hampshire law because the New Hampshire court narrowly construed the law to cover only words that had a "direct tendency to cause acts of violence by the person to whom, individually, the remark [was] addressed." *Id.* at 573, 62 SCt at 770, 86 LEd 1031. The words had to be "what men of common intelligence would understand would be words likely to cause an average addressee to fight." *Id.*

---

2.　　Suhn's utterances do not fit under the "obscene" category of unprotected speech. Obscene speech "must be, in some significant way, erotic." Cohen v. California, 403 US 15, 20, 91 SCt 1780, 1785, 29 LEd2d 284 (1971) (citing Roth v. United States, 354 US 476, 77 SCt 1304, 1 LEd2d 1498 (1957)).

-3-

[¶7.]     In decisions since the 1942 *Chaplinsky* decision, the United States Supreme Court has narrowed the "fighting words" doctrine.[3]  The Court recognized that some "verbal tumult, discord, and even offensive utterance" is necessary for free expression and debate.  Cohen v. California, 403 US 15, 24-25, 91 SCt 1780, 1788, 29 LEd2d 284 (1971).  In *Cohen*, the defendant was convicted of disturbing the peace for wearing a jacket bearing the words "Fuck the draft" to a California courthouse.  *Id.* at 16, 91 SCt at 1783-84, 29 LEd2d 284.  The Supreme Court per Justice Harlan reversed Cohen's conviction and held that "while the particular four-letter word being litigated here is perhaps more distasteful than most others of its genre, it is nevertheless often true that one man's vulgarity is another's lyric."  *Id.* at 25, 91 SCt at 1788, 29 LEd2d 284.

[¶8.]     The *Cohen* Court determined that the words "Fuck the draft" did not rise to the level of fighting words because Cohen did not direct the epithet at any person in particular.  *Id.* at 20, 91 SCt at 1785-86, 29 LEd2d 284.  The Court explained that for speech to fit under the unprotected fighting words category, the speech, "when addressed to the ordinary citizen, [must be], as a matter of common knowledge, inherently likely to provoke violent reaction."  *Id.* at 20, 91 SCt at 1785 (citing *Chaplinsky*, 315 US at 572, 62 SCt at 769, 86 LEd 1031).  The Court pointed

---

3.     Some courts and scholars have concluded that the two part definition of "fighting words" enunciated in *Chaplinsky* has since been reduced to only the second part of the definition, which only includes speech that "tend[s] to incite an immediate breach of the peace."  Purtell v. Mason, 527 F3d 615, 623-24 (7th Cir 2008); *see* UWM Post, Inc. v. Bd. of Regents of Univ. of Wisconsin, 774 FSupp 1163, 1169-70 (EDWis 1991); Smolla, Rodney A., *Overview of current doctrine—Outdated categorical approach of Chaplinsky v. New Hampshire*, 1 Smolla & Nimmer on Freedom of Speech § 2:70 (2008).

out that the presence of unwilling listeners to an expletive did not justify a breach of the peace conviction "where . . . there was no evidence that persons powerless to avoid appellant's conduct did in fact object to it." *Id* at 22, 91 SCt at 1786, 29 LEd2d 284. The *Cohen* Court also emphasized the right of American citizens to criticize the government "'not only [through] informed and responsible criticism but [through] the freedom to speak foolishly and without moderation.'" *Id* at 26, 91 SCt at 1788, 29 LEd2d 284 (quoting Baumgartner v. United States, 322 US 665, 673-74, 64 SCt 1240, 1245, 88 LEd 1525 (1944)). In *Gooding v. Wilson*, the United States Supreme Court reaffirmed the constitutional restriction that laws punishing "fighting words" must be "carefully drawn statutes not also susceptible of application to protected expression. . . ." 405 US 518, 523, 92 SCt 1103, 1106, 31 LEd2d 408 (1972) (citations omitted). The *Gooding* Court struck down the Georgia statute because the Georgia lower court defined the term "breach of the peace" too broadly. *Id*. The Court said that the broad definition "makes it a 'breach of peace' merely to speak words offensive to some who hear them, and so sweeps too broadly." *Id*. at 527, 92 SCt 1108, 31 LEd2d 408.

[¶9.] Again in *Lewis v. City of New Orleans*, the United States Supreme Court struck down a city ordinance that made it a crime for a person "wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty." 415 US 130, 132, 94 SCt 970, 972, 39 LEd2d 214 (1974) (quoting New Orleans Ordinance 828 MCS § 49-7). The Louisiana Supreme Court had ruled the ordinance constitutional because it was written narrowly to include only "'fighting words'

uttered to specific persons at a specific time. . . ." *Id.* at 132, 94 SCt at 972, 39 LEd2d 214 (quoting City of New Orleans v. Lewis, 263 La 809, 826, 269 So2d 450, 456 (1972)). The United States Supreme Court disagreed and held that because the law punished "only spoken words," it was facially overbroad, and unconstitutional. "Fighting words," the *Lewis* Court reiterated are "'those (words) which by their very utterance inflict injury or tend to incite an immediate breach of the peace.'" *Id.* at 133, 94 SCt at 972, 39 LEd2d 214 (citing *Gooding*, 405 US at 522, 92 SCt at 1106, 31 LEd2d 408).

[¶10.] In reference to *Lewis*, and *Gooding*, the Eighth Circuit Court of Appeals noted in *Hammond v. Adkisson* that "[i]t is now clear that words must do more than offend, cause indignation or anger the addressee to lose the protection of the First Amendment." 536 F2d 237, 239 (8thCir 1976) (citations omitted). Hammond's conviction was based on her verbal response to police officers. She said, "You m.f. son-of-a-bitches think you all can come out and do anything that you want to do." *Id.* at 238. The Eighth Circuit Court of Appeals reversed her conviction because the trial court had determined that her words were "abusive and profane" but had not found that her words were "likely to incite the addressee to a violent reaction under the circumstances of the case." *Id.* at 239-40. Consequently, the Eighth Circuit Court of Appeals found that her response to the officers did not constitute "fighting words" and, therefore, was constitutionally protected speech. *Id.* at 240.

[¶11.] In *In re S.J.N-K.*, our Court was also faced with the question of whether profanity and offensive gestures constituted "fighting words." 2002 SD 70,

¶31, 647 NW2d 707, 714-15. In that case, a juvenile encountered his former middle school principal while the principal and his family were shopping at a local business. The juvenile directed the words "fuck you" accompanied with extending his middle finger at the principal, and drove his vehicle close to the principal's vehicle as the principal was leaving the business's parking lot. *Id.* ¶¶3-4, 647 NW2d at 709-10. We were unable to reach a consensus on whether the juvenile's speech was constitutionally protected. Two Justices determined that the juvenile's speech was not protected; one Justice joined in result but did not reach the question of whether the words and gestures without the conduct were protected speech; and two Justices dissented, finding the speech and conduct protected. Therefore, *S.J.N-K.* provides no precedent for the case before us.

[¶12.] Nevertheless, the United States Supreme Court has made it clear that in order for speech to fall within the "fighting words" exception, the words by their very utterance have to "tend to incite an immediate breach of the peace" under the circumstances of the case. *Chaplinsky*, 315 US at 572, 62 SCt at 769, 86 LEd 1031. Suhn's words do not meet the exception. Although it may not be necessary to show that those who hear the words are actually provoked to violence, a telling commentary as to how "ordinary citizens" would likely react was how the people standing on Main Avenue in Brookings did react. The crowd merely responded with facial expressions of disbelief.[4]

---

4. In his dissent, Justice Sabers cites to *City of Eastlake v. Kirkpatrick,* 2007 WL 4485183 (OhioCtApp Dec 21, 2007) (unpublished). The circumstances in *Kirkpatrick* and the other referenced cases from the Ohio Court of Appeals are distinguishable from the circumstances here. In *Kirkpatrick*, it was "a

(continued . . .)

[¶13.] The circuit court's findings do not support a conclusion that Suhn's words were "fighting words." The circuit court simply relied on its findings that one person might have "taken offense," been sensitive to, or been "offended" by Suhn's epithet to the police. In this context, the circuit court concluded that words constituted "fighting words," unprotected by the First Amendment. We disagree. Just because someone may have been offended, annoyed, or even angered by Suhn's words does not make them fighting words. As offensive or abusive as Suhn's invective to the police may have been, "when addressed to the ordinary citizen," Suhn's words were not "inherently likely to provoke violent reaction." *See Cohen*, 403 US at 20, 91 SCt at 1785, 29 LEd2d 284 (citing *Chaplinsky*, 315 US 568, 62 SCt 766, 86 LEd 1031). The circuit court erred in determining that Suhn's utterances were unprotected speech.

[¶14.] We reverse.

[¶15.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, concur.

[¶16.] SABERS, Justice, dissents.

_____

(. . . continued)

very emotional situation for all parties involved." *Id.* at *5. Further, in the other Ohio cases cited, a crowd at an abortion protest and a crowd surrounding a fight were similarly "excited or angered." *Id.* (citing State v. Dickey, 600 NE2d 365 (OhioCtApp 1991); State v. Callahan, 549 NE2d 1230 (OhioCtApp 1989)). The crowd here was not excited, emotionally charged, or angered.

#24817

SABERS, Justice (dissenting).

[¶17.] I respectfully dissent. As recognized by the majority, fighting words are "those [words] which by their very utterance inflict injury or *tend to incite* an immediate breach of the peace." *Chaplinsky*, 315 US at 572, 62 SCt at 769, 86 LEd 1031 (emphasis added). Under this definition, the words spoken need not *actually* incite an immediate breach of the peace. Rather, they need only *tend* to incite an immediate breach. Furthermore, "[t]he test is what men of common intelligence would understand would be words likely to cause an average addressee to fight." *Id.* at 573, 62 SCt at 770, 86 LEd 1031.

[¶18.] Under the facts of this case – where an individual spewed the most distasteful profanities at police officers at two o'clock in the morning amidst hundreds of people, the majority of whom were likely intoxicated or under the influence of alcohol – the defendant's words had the tendency to provoke not only an average addressee but also a member of the crowd in this mob-like setting. *See* City of Eastlake v. Kirkpatrick, 2007 WL 4485183, at *4 (OhioCtApp Dec. 21, 2007) (unpublished). In discussing a case similarly involving police and a nearby crowd, the Ohio Appellate Court stated:

> [I]f the defendant's words are likely to incite others, profanity in the presence of a police officer may constitute fighting words. In *State v. Dickey,* [600 NE2d 365 (OhioCtApp 1991),] several officers responded to a fight at an apartment complex. The officers arrested one individual, and a second individual began to strike an officer. Thereafter, the defendant taunted the police officers, calling one of them an "'asshole pig.'" This court held that the appellant's comments were not protected speech, because they could have enticed other members of the crowd into further action against the police. In *State v. Callahan*, [549 NE2d 1230 (OhioCtApp 1989),] the defendant made several derogatory comments to a police officer at an abortion protest.

> The First District held that the defendant's conduct of berating the officer, in the midst of a crowd that was excited and angered, and after requests to desist, was such that it was likely to produce violence.

*Id.* (internal citations omitted). In this case, the crowd's reaction seems atypical, or at least unexpected for the situation, especially considering that the bar patrons congregating on the sidewalk may have been looking for further action. It is surprising to me that no one joined the defendant in yelling profanities at the police or even hurled objects at the patrol car. Thankfully, defendant's words did not incite an actual breach of the peace. However, the facts of this case are such that defendant's speech tended to incite a breach of the peace. Such speech is not protected under the Constitution, and the trial court's determination of the same was reasonable.