# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1951

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Michael D. Sanders, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 19, 1999
Filed: November 9, 1999

_____

Before BOWMAN, LAY, and BEAM, Circuit Judges.

_____

BOWMAN, Circuit Judge.

A South Dakota federal jury convicted Michael D. Sanders of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (1994). On direct appeal, Sanders argues that the District Court[1] committed three errors: (1) refusing to suppress evidence, including the firearm, seized from a vehicle during a traffic stop; (2) instructing the jury that the police officers' stop and search of the car were legal; and

_____

[1] The Honorable RICHARD H. BATTEY, United States District Judge for the District of South Dakota. At the time of trial, Judge Battey was the Chief Judge for the District of South Dakota.

(3) refusing to allow Sanders's wife to testify regarding the measures she took to keep firearms away from him.  We affirm.

On August 6, 1987, Sanders was a passenger in a pickup truck that was towing a trailer.  Officer Keith Jorgenson of the South Dakota Highway Patrol stopped the vehicle because one of the two taillights on the trailer was missing a red lens and was emitting white light from the exposed bulb.  Approximately ten minutes later, Special Agents John Buszko and Robert Beyer of the South Dakota Division of Criminal Investigation arrived to provide backup.  As Officer Jorgenson discussed the traffic offense with the driver, Ricky Standon, Agent Buszko approached Sanders, who remained sitting in the passenger side of the truck.  Agent Buszko asked Sanders if he possessed any guns or knives, and Sanders denied any such possession.  Having observed a small, folded knife on the dashboard in front of Sanders, Agent Buszko asked Sanders to step out of the vehicle for a pat-down search.

As Sanders exited the vehicle, Agent Buszko observed that Sanders had several unhealed sores and cuts, which are consistent with methamphetamine use.  In addition, Agent Buszko noticed a ball of electrical tape where Sanders had been sitting.  According to Agent Buszko's testimony at the suppression hearing, electrical tape frequently is used to conceal narcotics because it is thought to conceal their scent.  Agent Buszko seized the ball of tape and asked Sanders about it.  Despite having just been seated on this nearly baseball-sized ball of tape, Sanders denied any knowledge of it.  When the Agents later opened the ball of tape, it was found to contain methamphetamine and marijuana.

While Agent Buszko questioned Sanders, Agent Beyer noticed a maroon bag in the bed of the pickup truck.  Before touching the bag, the Agents questioned Sanders and Standon regarding its ownership.  After both Sanders and Standon denied any knowledge of the bag, Agent Buszko removed the bag from the pickup and placed it on the ground between Sanders and Standon.  Once again, the Agents asked Sanders

and Standon whether they knew who owned the bag or how it got into the truck. Sanders and Standon again denied any knowledge of the bag. Agent Buszko then searched the bag and found a .22 caliber Ruger handgun.

Standon later admitted that he owned the bag but claimed that Sanders had the gun with him when they began their trip to South Dakota. Agents later determined that Sanders's wife, Tina Sanders, owned the handgun. Sanders moved to suppress all evidence seized as a result of the traffic stop. Upon de novo review of the suppression hearing transcripts and exhibits, the District Court denied the motion. After a jury convicted Sanders of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), the District Court sentenced him to forty-one months' imprisonment.

Sanders first challenges the denial of his motion to suppress. Sanders argues that Officer Jorgenson lacked probable cause to stop the truck and that the Agents lacked probable cause to search his person and the maroon bag. We review findings of historical fact made by the District Court for clear error but review the ultimate questions of reasonable suspicion to stop and probable cause to make a warrantless search de novo. See Ornelas v. United States, 517 U.S. 690, 699 (1996).

Sanders argues that Officer Jorgenson lacked probable cause to stop the truck because the taillights on the trailer in fact were not in violation of South Dakota law. The statute in question provides in relevant part:

> Every motor vehicle, trailer, semitrailer and pole trailer, except as otherwise provided in this section, and any other vehicle which is being drawn at the end of a combination of vehicles shall be equipped with at least two tail lamps mounted on the rear, which when lighted as required in § 32-17-4 shall emit a red light plainly visible from a distance of one thousand feet to the rear. However, motor vehicles, trailers, semitrailers and pole trailers manufactured and assembled prior to July 1, 1973, shall have one tail lamp mounted on the left side of the rear which when lighted

as required in § 32-17-4 shall emit a red light plainly visible from a distance of five hundred feet to the rear. . . . On vehicles with more than one tail lamp, the lamps shall be mounted on the same level and as widely spaced laterally as practicable.

S.D. Codified Laws § 32-17-8 (Michie 1998). The District Court found that Officer Jorgenson stopped the vehicle because "one of the [two] taillights on the trailer was missing a red lens and was emitting white light from the exposed bulb." Mem. Op. & Order Den. Mot. to Suppress at 2. Because the trailer was manufactured before 1973, however, Sanders argues that the trailer, with one red taillight, was not in violation of the statute.

The Government argues that, regardless of whether the trailer needed one or two taillights, it violated the statute because one of the taillights was missing a red lens.[2] The District Court apparently agreed with this interpretation of the statute. A picture of the trailer "reveal[ed] two tail lights, one much higher and to the right of the other. The higher tail light is without a red lense as required by § 32-17-8 . . . ." Mem. Op. & Order Den. Mot. to Suppress at 6.

We find it unnecessary to parse the words of the South Dakota statute in determining whether Officer Jorgenson had probable cause to stop the vehicle. Regardless of whether or not the trailer actually was in violation of the South Dakota statute, Officer Jorgenson was justified in making the stop if he "objectively ha[d] a reasonable basis for believing that the driver has breached a traffic law.'" United States

_____

[2] Additionally, the Government argues that the placement of the taillights, that is, one higher than the other, was in itself a violation of the statute. But there is no indication in the record that Officer Jorgenson stopped the vehicle because of the placement of the lights. In fact, the record is clear that Officer Jorgenson stopped the vehicle because the trailer had a taillight emitting a white light. See Tr. of Jury Trial at 21-22. Therefore, we will not consider this placement violation as a justification for the traffic stop.

v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996); accord United States v. Dexter, 165 F.3d 1120, 1124 (7th Cir. 1999). Even if the trailer was not technically in violation of the statute, Officer Jorgenson could have reasonably believed that the trailer violated the statute because one light was missing a red lens or because he believed that the trailer was manufactured after 1973. The determination of whether probable cause existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time. See Arizona v. Evans, 514 U.S. 1, 17 (1995) (O'Connor, J., concurring). There is no indication in the record that Officer Jorgenson knew that the trailer was manufactured before 1973. In fact, given the apparent attempt to have two functioning taillights on the trailer, Officer Jorgenson could have reasonably believed at the time that the trailer was subject to the two taillight requirement. Finally, this Court should not expect state highway patrolmen to interpret the traffic laws with the subtlety and expertise of a criminal defense attorney. Officer Jorgenson saw a white taillight and believed that South Dakota law required such taillights to be red. Even if Officer Jorgenson was wrong, we cannot say that his belief was unreasonable.[3]

Regarding the searches that revealed the methamphetamine and the gun, we conclude that the Agents were justified in searching the maroon bag and the ball of tape. This case is controlled by United States v. Sanders, 130 F.3d 1316, 1317 (8th Cir. 1997), in which this Court concluded that the defendant's "statements to the officers that he did not own the bag were sufficient to constitute abandonment." Even if the Agents knew that Sanders was lying when he claimed not to know anything about the ball of tape and the maroon bag, this Court still must conclude that the property was abandoned. See id. at 1318 (citing United States v. Ruiz, 935 F.2d 982, 984 (8th Cir. 1991)). Further, Agent Buszko's pat-down of Sanders, which caused the ball of tape that Sanders had been sitting on to be revealed in the first place, was legal under Terry

---

[3] There may be occasions when an officer's understanding of the law is simply unreasonable. In such a case, of course, the officer's belief that there is a traffic violation would not be sufficient to establish probable cause to stop the vehicle.

v. Ohio, 392 U.S. 1 (1968), because Sanders lied about the knife and Agent Buszko was justified in searching for other weapons.

Because Officer Jorgenson had probable cause to stop the vehicle and because the maroon bag and ball of tape were abandoned, we conclude that all of the evidence seized during the traffic stop was admissible.

Sanders next argues that the District Court erred in submitting Instruction 15 to the jury. Jury Instruction 15 stated:

> The Court has ruled as a matter of law that the stop of defendant's vehicle, the subsequent search of the container in which the gun was found, and the seizure of the gun and items found in the cab were all lawful acts of the law enforcement officer performing law enforcement duties.

Tr. of Jury Trial at 198. A district court has wide discretion in submitting jury instructions. See United States v. Clark, 980 F.2d 1143, 1146 (8th Cir. 1992). One purpose of instructions is to focus the jury's attention on the "essential issues" in the case. United States v. Ribaste, 905 F.2d 1140, 1143 (8th Cir. 1990). In this case, the District Court perceived that Sanders had confused the jury by asking witnesses repeatedly about the trailer taillights and the knife, as if to cast doubt on the legality of the stop and search. See Tr. of Jury Trial at 183-84. In fact, a member of the jury asked a question about search warrants during the course of trial. See Tr. of Jury Trial at 118, 183-84. We conclude that the District Court acted within its discretion in making clear to the jury the extent of its role.

Finally, Sanders argues that the District Court abused its discretion by excluding testimony of Tina Sanders regarding her attempts to keep firearms away from him. The record simply does not support this argument. Tina Sanders testified that she put the firearm in the truck and that she failed to inform her husband. See Tr. of Jury Trial at

159-60. She testified that she does not keep firearms openly in her house because her husband is not allowed to be around them. See Tr. of Jury Trial at 162-63. Finally, she testified that she keeps her firearms "in a box locked because his probation officer did tell [her] one time that [she] could have firearms as long as it was under lock and key and [she] had the keys to it." Tr. of Jury Trial at 163. Assuming arguendo that this testimony of Tina Sanders was relevant, Sanders's final argument must fail because the District Court allowed the testimony.

AFFIRMED.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.