2004 SD 63

**Ashley Lynn WEBB, Petitioner and Appellant,**

v.

**SOUTH DAKOTA DEPARTMENT OF COMMERCE AND REGULATION, Respondent and appellee.**

**No. 22960.**

Supreme Court of South Dakota.

Considered on Briefs March 22, 2004.

Decided May 12, 2004.

H.I. King, Aberdeen, South Dakota, Attorney for petitioner and appellant.

Lawrence E. Long, Attorney General, Ann C. Meyer, Assistant Attorney General, Pierre, South Dakota, Attorneys for respondent and appellee.

PER CURIAM.

[¶ 1.] Ashley Lynn Webb appeals a circuit court order affirming a final decision by the South Dakota Department of Commerce and Regulation (the department) revoking her driving privileges for one year. We reverse.

### FACTS

[¶ 2.] At approximately 12:06 a.m. on the morning of August 25, 2002, an Aberdeen police officer stopped Webb's vehicle as she was backing it down a public alley near a gas station. The officer made the stop because he believed that backing a car on a public street violated a city ordinance. The officer administered a verbal warning to Webb and, during their encounter, noted an odor of an alcoholic beverage on her breath. Webb, who was under 21, initially denied drinking. However, a preliminary breath test (PBT) indicated otherwise, and she ultimately admitted having consumed alcoholic beverages. The officer arrested Webb for driving after the consumption of alcohol while under age 21 (*see* SDCL 32–23–21)[1] and for driving with a suspended license.

[¶ 3.] After the arrest, the officer read Webb the implied consent warnings.[2]

1. SDCL 32–23–21 provides in pertinent part: It is a Class 2 misdemeanor for any person under the age of twenty-one years to drive, operate, or be in actual physical control of any motor vehicle:
   (1) If there is physical evidence of 0.02 percent or more by weight of alcohol in the person's blood as shown by chemical analysis of the person's breath, blood, or other bodily substance[.]

2. The implied consent warnings are contained in SDCL 32–23–10 which provides in pertinent part:
   Any person who operates any vehicle in this state is considered to have given consent to the withdrawal of blood or other bodily substance and chemical analysis of the person's blood, breath, or other bodily substance to determine the amount of alcohol in the person's blood and to determine the presence of marijuana or any controlled drug or substance.
   The person shall be requested by the officer to submit to the withdrawal of blood or other bodily substance for chemical analysis or chemical analysis of the person's breath and shall be advised by the officer that:
   (1) If the person refuses to submit to the withdrawal or chemical analysis, no withdrawal or chemical analysis may be required unless the person has been arrested for a third, fourth, or subsequent violation of § 32–23–1, constituting a felony offense under § 32–23–4 or 32–23–4.6 or has been arrested for vehicular homicide under § 22–16–41 or vehicular battery under § 22–16–42;

Webb refused to take a blood test. Given the lack of blood test evidence, the State subsequently dismissed the driving after consumption charge, and the department initiated proceedings to revoke Webb's driving privileges for her implied consent refusal. The department conducted a hearing on the revocation on March 18, 2003. During the hearing, Webb's counsel questioned the arresting officer about the "backing" ordinance under which he stopped Webb. Ultimately, the officer agreed that, under the language of the ordinance, Webb's backing of her vehicle in a public alley did not violate the ordinance.[3]

[¶ 4.] Consequently, Webb asserted that there was a lack of a reasonable suspicion of a violation of law sufficient to support the stop. Webb further asserted that the illegal stop nullified her implied consent violation. The hearings officer disagreed and entered a proposed decision revoking Webb's driving privileges for one year. The proposed decision was adopted by the department, and Webb appealed to circuit court. The circuit court entered its order affirming the decision of the department. Webb now appeals.

### ISSUE

[¶ 5.] **Did the officer have a reasonable suspicion of a violation of law sufficient to support the stop of Webb's vehicle?**

(2) If the person refuses to submit to the withdrawal or chemical analysis, the person's driver's license shall be revoked for one year, unless pursuant to § 32–23–11.1 the person pleads guilty to a violation of § 32–23–1 or 32–23–21, prior to a revocation order being issued; and

(3) The person has the right to have a chemical analysis performed by a technician of the person's own choosing at

[¶ 6.] The necessity of a reasonable suspicion of a violation of law to support a traffic stop was most recently discussed in *State v. Chavez*, 2003 SD 93, ¶¶ 15–16, 668 N.W.2d 89, 95:

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. Although this protection generally requires probable cause to search, "[t]he requisite level of suspicion necessary to effectuate the stop of a vehicle is not equivalent to probable cause necessary for an arrest or a search warrant." All that is required is that the police officer has "a reasonable suspicion to stop an automobile." Therefore, the factual basis needed to support a traffic stop is minimal.

While the stop may not be the product of mere whim, caprice or idol [*sic*] curiosity, it is enough that the stop is based upon "specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant [the] intrusion." Under these standards, it is well established that a traffic violation, however minor, creates sufficient cause to stop the driver of a vehicle. (citations omitted).

The ultimate determination of the existence of a reasonable suspicion to stop a vehicle is a question of law reviewed de novo. *State v. Faulks*, 2001 SD 115, ¶ 8, 633 N.W.2d 613, 617.

the person's own expense, in addition to the test requested by the officer.

3. The ordinance, as quoted during the revocation hearing, provided, "Driver of a vehicle may not back the vehicle unless such movement can be made with safety and without interfering with other traffic." The officer conceded that he did not recall any other vehicles around Webb's vehicle and that, under the specific language of the ordinance, Webb's action did not constitute a violation.

[¶ 7.] In *United States v. Sanders*, 196 F.3d 910 (8th Cir.1999), the Eighth Circuit Court of Appeals addressed the effect of an officer's mistake of law on his determination of cause for a vehicle stop. In *Sanders*, an officer had stopped a pickup towing a trailer because one of the two taillights on the trailer was missing a red lens and was emitting white light from the exposed bulb. A subsequent search of the vehicle disclosed methamphetamine, marijuana, and a handgun belonging to a convicted felon who was a passenger in the pickup. On appeal of his conviction as a felon in possession of a firearm, the defendant argued that the officer lacked sufficient cause to stop the pickup because the taillight on the trailer was not, in fact, in violation of South Dakota law. The Eighth Circuit disagreed holding that even if the officer was wrong in his belief that a violation had occurred, his belief was objectively reasonable.

> We find it unnecessary to parse the words of the South Dakota statute in determining whether Officer Jorgenson had probable cause to stop the vehicle. Regardless of whether or not the trailer actually was in violation of the South Dakota statute, Officer Jorgenson was justified in making the stop if he "objectively ha[d] a reasonable basis for believing that the driver ha[d] breached a traffic law." Even if the trailer was not technically in violation of the statute, Officer Jorgenson could have reasonably believed that the trailer violated the statute because one light was missing a red lens or because he believed that the trailer was manufactured after 1973. The determination of whether probable cause existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time. There is no indication in the record that Officer Jorgenson knew that the trailer was manufactured before 1973. In fact, given the apparent attempt to have two functioning taillights on the trailer, Officer Jorgenson could have reasonably believed at the time that the trailer was subject to the two taillight requirement. Finally, this Court should not expect state highway patrolmen to interpret the traffic laws with the subtlety and expertise of a criminal defense attorney. Officer Jorgenson saw a white taillight and believed that South Dakota law required such taillights to be red. Even if Officer Jorgenson was wrong, we cannot say that his belief was unreasonable. (citations omitted).

*Sanders*, 196 F.3d at 913 (citations omitted)(emphasis added). *See also United States v. Mallari*, 334 F.3d 765, 766–767 (8th Cir.2003)(officer had objectively reasonable basis for believing driver breached traffic law by driving without light on rear license plate even where statute requiring that numbering on plate be "plainly visible" did not require a separate light to illuminate plate). However, the Eighth Circuit also added an important exception to its analysis in *Sanders*, noting that, "There may be occasions when an officer's understanding of the law is simply unreasonable. In such a case, of course, the officer's belief that there is a traffic violation would not be sufficient to establish probable cause to stop the vehicle." *Sanders*, 196 F.3d at 913, n. 3.

[¶ 8.] Consistent with the exception noted by the Eighth Circuit in *Sanders*, we find this to be a case where the officer's understanding of the law was not objectively reasonable. The officer testified during the revocation hearing that it was illegal to back down an alley, that an Aberdeen ordinance prohibited *any* act of backing down a public street and that an alley was considered a public street. However, when asked for a cite to the pertinent

ordinance, the officer could only make a vague reference to a provision on "legal lane driving." When pressed for the citation, the officer said that he would have to look in the "City Statute book" and get the "Statute" because he did not know what it was "right off hand." After an ordinance book was located, the officer could only identify an ordinance prohibiting drivers from backing up unless such movement could be made with safety and without interfering with other traffic. However, he conceded that Webb backed her vehicle without interfering with other traffic. Therefore, the officer also conceded that the backing he observed did not violate the ordinance.

[¶ 9.] As set forth above, this officer was plainly unaware of what the ordinance prohibited. At best, he assumed that some Aberdeen ordinance prohibited any instance of backing a vehicle in a public street no matter how reasonable or necessary the maneuver. This assumption defies logic and common sense. Drivers must frequently put their vehicles in reverse and back up on streets or alleys for a variety of reasons. A specific example in the context of alleys is the movement of transport and delivery vehicles loading or unloading merchandise or supplies at commercial establishments. The drivers of service vehicles, such as garbage trucks and utility maintenance vehicles, would also be unable to accomplish their tasks if they could not back into specific positions. In the context of automobiles, drivers must

often back a vehicle from a location where a wrong turn has been made, back a vehicle to avoid an unexpected obstruction in the road, or back from their driveway into a public street to leave their home. All of these maneuvers, reasonable if executed safely and without interfering with other traffic, would be prohibited under the officer's original assumption of the ordinance.

[¶ 10.] Because the officer was not aware of the language of the ordinance, and because his assumption was not supported (by his own admission) by the plain language of the ordinance, we find his assumption to be objectively unreasonable. For that reason, we hold that his stop of Webb's vehicle was not based upon a reasonable suspicion of a violation of law. The illegality of the stop also requires reversal of the decision revoking Webb's driving privileges. *See Graf v. Dept. of Commerce and Regulation*, 508 N.W.2d 1 (S.D.1993).

[¶ 11.] Reversed.

[¶ 12.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justice, participating.