#25534-r-GAS

**2010 S.D. 91**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

KEVIN D. WRIGHT,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
BRULE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE BRUCE V. ANDERSON
Judge

* * * *

MARTY J. JACKLEY
Attorney General

GARY CAMPBELL
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.

PATRICK DUFFY
Rapid City, South Dakota                    Attorney for defendant
                                            and appellant.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 4, 2010

OPINION FILED **12/08/10**

#25534

SEVERSON, Justice

[¶1.] Kevin Duane Wright was convicted of possession of marijuana in violation of SDCL 22-42-6. He appeals the trial court's order denying his motion to suppress evidence obtained during the stop and subsequent search of his vehicle. Wright argues that his failure to dim his headlights did not violate South Dakota law and that the officer therefore did not have reasonable suspicion or probable cause to stop his vehicle. We reverse.

BACKGROUND

[¶2.] In the early evening on November 11, 2008, Trooper Brian Biehl of the South Dakota Highway Patrol was traveling west on Interstate 90 in Brule County, South Dakota. It was dark and overcast. At approximately 5:55 p.m., Trooper Biehl encountered Wright's vehicle, which was traveling west in the right lane of traffic. Wright was driving sixty-five miles per hour, approximately ten miles per hour slower than Trooper Biehl. Trooper Biehl, who was driving in the left lane, passed Wright.

[¶3.] When Trooper Biehl was approximately six car-lengths ahead of Wright, he noticed that Wright's headlights were exceptionally bright. Trooper Biehl observed that Wright's vehicle was equipped with a four headlight system. On these systems, the two outside lights operate as the low beam and the two inside lights operate as the high beam. Trooper Biehl saw that the two inside lights on Wright's vehicle were illuminated, meaning that his headlights were on high beam.

[¶4.] Trooper Biehl, believing that Wright's failure to dim his headlights as he was passed violated SDCL 32-17-7, decided to stop Wright. Trooper Biehl, who

- 1 -

was still driving in the left lane, slowed his vehicle and allowed Wright to overtake him. Wright failed to dim his headlights when he overtook Trooper Biehl, but Trooper Biehl did not testify that this was a basis for the stop. Once behind Wright's vehicle, Trooper Biehl activated his lights. Wright pulled to the side of the highway and stopped his vehicle.

[¶5.]        Trooper Biehl approached Wright's car. As he stood at the driver's-side window, Trooper Biehl immediately noticed a strong odor of burnt marijuana emanating from Wright's vehicle. Trooper Biehl asked Wright when he last smoked marijuana. Wright stated that he smoked marijuana a few hours earlier. Trooper Biehl then asked Wright "how much marijuana was in the vehicle." Wright admitted that "there was a bag of personal use marijuana on the floor." Trooper Biehl removed Wright from his vehicle and placed him in the patrol car. Trooper Biehl searched Wright's car and located a bag containing one-half ounce of a green leafy substance on the floor of the vehicle. He also found a tin Altoid box containing three-fourths of an ounce of a green leafy substance next to the driver's seat, a pipe, and other containers. Field tests confirmed that the substance Trooper Biehl found in Wright's vehicle was marijuana.

[¶6.]        Trooper Biehl informed Wright that he was under arrest for possession of marijuana and advised Wright of his Miranda rights. Wright waived his rights and agreed to speak with Trooper Biehl. When Trooper Biehl asked Wright whether "there was any more marijuana in the vehicle," Wright directed Trooper Biehl to "an apple box in the back seat of the vehicle." Trooper Biehl located the

box, which contained 4.16 ounces of marijuana. Wright was later transported to the Brule County Jail, where he tested positive for marijuana ingestion.

[¶7.]     Trooper Biehl issued Wright citations for possession of marijuana, possession of drug paraphernalia, and ingestion of a toxic substance. A complaint and an information were later filed charging essentially the same violations. Wright filed a motion to suppress the evidence discovered during the stop and subsequent search of his vehicle. He argued that his failure to dim his headlights was not a violation of South Dakota law and that Trooper Biehl therefore did not have reasonable suspicion or probable cause to stop his vehicle. The trial court denied Wright's motion to suppress. The trial court acknowledged that Trooper Biehl misinterpreted SDCL 32-17-7, but found that his mistake of law was objectively reasonable because the statute is "counterintuitive and confusing." The case proceeded to a bench trial, and the trial court found Wright guilty of one count of marijuana possession. Wright appeals the trial court's denial of his motion to suppress.

## STANDARD OF REVIEW

[¶8.]     Our standard of review of motions to suppress is well settled. "A motion to suppress based on an alleged violation of a constitutionally protected right is a question of law reviewed de novo." *State v. Thunder*, 2010 S.D. 3, ¶ 11, 777 N.W.2d 373, 377 (quoting *State v. Labine*, 2007 S.D. 48, ¶ 12, 733 N.W.2d 265, 268). The trial court's factual findings are reviewed under the clearly erroneous standard. *Id.* (citation omitted). "Once the facts have been determined, however, the application of a legal standard to those facts is a question of law reviewed de

novo." *Id.* (quoting *Labine*, 2007 S.D. 48, ¶ 12, 733 N.W.2d at 269). This Court will not be restricted by the trial court's legal rationale. *Id.* (citing *State v. Christensen*, 2003 S.D. 64, ¶ 7, 663 N.W.2d 691, 694).

## ANALYSIS AND DECISION

[¶9.] Wright challenges the stop of his vehicle under the Fourth Amendment to the United States Constitution. The Fourth Amendment protects individuals from unreasonable searches and seizures:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "Police ordinarily must obtain a warrant based on probable cause and issued by a neutral magistrate before searching or seizing an individual's property." *Thunder*, 2010 S.D. 3, ¶ 13, 777 N.W.2d at 378 (citing *State v. DeLaRosa*, 2003 S.D. 18, ¶ 7, 657 N.W.2d 683, 685 (citing *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905 (1968))). "If a warrantless search or seizure is conducted, it is the State's burden to show [that] the entry into the protected area was justified." *Id.* (citing *Christensen*, 2003 S.D. 64, ¶ 12, 663 N.W.2d at 695 (citing *Vale v. Louisiana*, 399 U.S. 30, 34, 90 S.Ct. 1969, 1972, 26 L.Ed.2d 409 (1970))).

[¶10.] "The Fourth Amendment's prohibition against unreasonable searches and seizures applies when a vehicle is stopped by law enforcement." *State v. Hayen*, 2008 S.D. 41, ¶ 5, 751 N.W.2d 306, 308 (quoting *State v. Muller*, 2005 S.D. 66, ¶ 14, 698 N.W.2d 285, 288). *See Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391,

1396, 59 L.Ed.2d 660, 667 (1979). Although the Fourth Amendment generally requires a warrant, the United States Supreme Court recognizes police officers' need to safely and effectively perform their functions. *DeLaRosa*, 2003 S.D. 18, ¶ 7, 657 N.W.2d at 685-86 (citing *Terry*, 392 U.S. at 23, 88 S.Ct. at 1881, 20 L.Ed.2d at 906-07). The Court therefore established that "the Fourth Amendment permits a brief investigatory stop of a vehicle when 'the officer's action is supported by reasonable suspicion . . . that criminal activity may be afoot.'" *Hayen*, 2008 S.D. 41, ¶ 5, 751 N.W.2d at 308 (quoting *State v. Kenyon*, 2002 S.D. 111, ¶ 14, 651 N.W.2d 269, 273).

[¶11.]     "[A]rticulating a precise definition of reasonable suspicion is 'not possible.'" *State v. Quartier*, 2008 S.D. 62, ¶ 10, 753 N.W.2d 885, 888 (quoting *State v. Aaberg*, 2006 S.D. 58, ¶ 10, 718 N.W.2d 598, 600 (citing *Ornelas v. United States*, 517 U.S. 690, 695, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911 (1996))). "Reasonable suspicion is a common-sense and non-technical concept dealing with the practical considerations of everyday life." *Id.* (citing *Aaberg*, 2006 S.D. 58, ¶ 10, 718 N.W.2d at 600). Thus, while a stop may not be the "product of mere whim, caprice, or idle curiosity, it is enough that the stop is based upon 'specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant the intrusion.'" *Id.* (quoting *State v. Akuba*, 2004 S.D. 94, ¶ 15, 686 N.W.2d 406, 413). "Once reasonable suspicion arises, law enforcement may stop the vehicle to confirm or discount that suspicion." *Id.* (citing *State v. Herrboldt*, 1999 S.D. 55, ¶ 8, 593 N.W.2d 805, 808 (citing *Adams v. Williams*, 407 U.S. 143, 145-46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972))).

[¶12.]    It is also well established that "[a]n officer's observation of a traffic violation, however minor, gives the officer probable cause to stop a vehicle[.]" *Akuba*, 2004 S.D. 94, ¶ 16, 686 N.W.2d at 414 (quoting *United States v. Luna*, 368 F.3d 876, 878 (8th Cir. 2004)).  *See Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996) ("[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.") (citing *Prouse*, 440 U.S. at 659, 99 S.Ct. at 1399; *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977) (per curiam)). Probable cause exists when the facts "would lead a reasonable and prudent person to believe it fairly probable that a crime [has] been committed[.]"  *State v. Hanson*, 1999 S.D. 9, ¶ 14, 588 N.W.2d 885, 890 (quoting *State v. Zachodni*, 466 N.W.2d 624, 629 (S.D. 1991)).

[¶13.]    Probable cause, not reasonable suspicion, was the basis for the stop of Wright's vehicle.  Trooper Biehl believed that he observed a violation of SDCL 32-17-7 and that he therefore had probable cause to stop Wright's vehicle:

> Q:    And your understanding of the stop was that he was in violation of SDCL 32-17-7, correct?
>
> A:    Correct.
>
> Q:    And at that point, did you believe you had probable cause to make that stop?
>
> A:    Yes, I did[.] . . .
>
> Q:    Was there any other behavior on the part of [Wright] that gave you any other reason to stop him other than what you have described concerning his bright lights?
>
> A:    No.

Q:     He did not weave in his lane, did he?

A:     No, he did not.

. . .

Q:     Beyond the probable cause that you've stated you felt you had pursuant to SDCL 32-17-7, did you form any other opinions about his behavior that night as he drove the car?

A:     No.

Q:     So there was no, other than the headlight infraction that you – that you believe took place, there was no other reasonable suspicion that there was anything afoot wrong with what he was doing that night, correct?

A:     Prior to the stop, no.

Thus, although probable cause is not ordinarily required to justify a traffic stop, the proper question in this case is whether Trooper Biehl had probable cause to believe Wright violated SDCL 32-17-7.

[¶14.]     Wright argues that his failure to dim his headlights when Trooper Biehl passed him did not violate SDCL 32-17-7. That statute requires a motorist to dim his headlights when he meets or overtakes another vehicle:

> Whenever a motor vehicle meets another vehicle or *overtakes another vehicle proceeding in the same direction on any highway*, the driver shall tilt the beams of the headlamps downward, provided that at all times, as required in § 32-17-4, at least two lights shall be displayed on the front of and on opposite sides of every motor vehicle other than a motorcycle.

SDCL 32-17-7 (emphasis added). Thus, a motorist must dim his headlights when he passes another vehicle, but not when he is passed by another vehicle. But at the preliminary hearing, Trooper Biehl testified that the basis for the stop was Wright's failure to dim his headlights when he was overtaken by Trooper Biehl:

Q: Can you explain to me precisely the law upon which you relied to make this stop?

A: 32-17-7 is the statute. It's a – I can't quote it to you offhand, but its – you need to – required to dim your headlights when you are meeting or overtaken by another vehicle. And there is a certain distance. I believe it's – I don't recall offhand what it is, but like I said, he never did dim it the whole time I went – went by him.

Q: Does that law state that you should dim your lights when approaching oncoming traffic or when you are overtaking a vehicle?

A: Like I said, I can't – can't advise the exact wording of it. I was westbound as was he.

Trooper Biehl thus made a mistake of law, believing that SDCL 32-17-7 required Wright to dim his headlights when Trooper Biehl passed him. Because this mistake of law was the basis for the stop, Wright argues that Trooper Biehl did not have probable cause to stop his vehicle.[1] He contends that the stop violated his Fourth

---

1. At the preliminary hearing, Trooper Biehl indicated that an additional basis for the stop was Wright's failure to dim his headlights to oncoming traffic. Because SDCL 32-17-7 requires a motorist to dim his headlights when he meets oncoming traffic, the failure to dim to oncoming traffic could have provided Trooper Biehl probable cause to stop Wright's vehicle. But the trial court concluded that there were not sufficient facts to establish that Wright failed to dim to oncoming traffic. The trial court found that the video from Trooper Biehl's dashboard camera "shows an absence of any substantial traffic on [Interstate] 90 around the time of the stop and search of [Wright's] vehicle." The trial court also found that "[t]he fact that some traffic may have been coming from the east at some vague point in time is irrelevant in this case as there is no way to know, based on the record, if those vehicles were close enough under the statute to give rise to [Wright's] duty to dim his lights." Accordingly, we do not reach the question whether Wright's failure to dim to oncoming traffic provided Trooper Biehl probable cause to stop Wright's vehicle.

Amendment rights and that the trial court should have suppressed the evidence discovered during the stop and subsequent search of his vehicle.

[¶15.] In *United States v. Sanders*, 196 F.3d 910 (1999), the Eighth Circuit addressed the effect of an officer's mistake of law on the reasonableness of a traffic stop. In *Sanders*, an officer stopped a pickup towing a trailer because one of the two taillights on the trailer was missing a red lens and was emitting white light from the exposed bulb. A subsequent search of the vehicle revealed methamphetamine, marijuana, and a handgun. Sanders challenged the stop, arguing that the officer lacked sufficient cause to stop him because a damaged taillight does not violate South Dakota law. The Eighth Circuit upheld the stop, holding that even if the officer was wrong in his belief that a violation occurred, his belief was objectively reasonable.[2] *Id.* at 913. But the court cautioned that "[t]here may be occasions

---

2.   A majority of courts have held that an officer's mistake of law, no matter how reasonable, cannot provide objectively reasonable grounds for a stop. *See United States v. Lopez-Valdez*, 178 F.3d 282 (5th Cir. 1999); *United States v. Miller*, 146 F.3d 274 (5th Cir. 1998); *United States v. Urrieta*, 520 F.3d 569 (6th Cir. 2008); *United States v. McDonald*, 453 F.3d 958 (7th Cir. 2006); *United States v. King*, 244 F.3d 736 (9th Cir. 2001); *United States v. Twilley*, 222 F.3d 1092 (9th Cir. 2000); *United States v. Lopez-Soto*, 205 F.3d 1101 (9th Cir. 2000); *United States v. Pena-Montes*, 589 F.3d 1048 (10th Cir. 2009); *United States v. Tibbetts*, 396 F.3d 1132 (10th Cir. 2005); *United States v. DeGasso*, 369 F.3d 1139 (10th Cir. 2004); *United States v. Chanthasouxat*, 342 F.3d 1271 (11th Cir. 2003). *See also People v. Ramirez*, 140 Cal.App.4th 849, 44 Cal.Rptr.3d 813 (2006); *Hilton v. State*, 961 So.2d 284 (Fla. 2007); *Martin v. Kan. Dep't of Rev.*, 285 Kan. 625, 176 P.3d 938 (2008); *State v. Anderson*, 683 N.W.2d 818 (Minn. 2004); *State v. George*, 557 N.W.2d 575 (Minn. 1997); *State v. Kilmer*, 741 N.W.2d 607 (Minn.App. 2007); *Couldery v. State*, 890 So.2d 959 (Miss.App. 2004); *State v. Lacasella*, 313 Mont. 185, 60 P.3d 975 (2002); *Byer v. Jackson*, 241 App.Div.2d 943, 661 N.Y.S.2d 336 (1997); *State v. Williams*, 185 S.W.3d 311 (Tenn. 2006); *State v. Lussier*, 171 Vt. 19, 757 A.2d 1017 (2000); *State v. Longcore*, 226 Wis.2d 1, 594 N.W.2d 412 (1999).

(continued . . .)

when an officer's understanding of the law is simply unreasonable." *Id.* at 913 n.3. "In such a case, of course, the officer's belief that there is a traffic violation would not be sufficient to establish probable cause to stop the vehicle." *Id.*

[¶16.] The Eighth Circuit elaborated on its approach to this issue in *United States v. Martin*, 411 F.3d 998 (2005). In that case, an officer stopped Martin because his right brake light did not illuminate as his car approached a stop sign. The officer eventually searched the vehicle and discovered a bag of marijuana, cash, and a small scale. Martin argued that the traffic stop was not reasonable because an inoperative brake light did not violate the Oglala Sioux Tribe's Motor Vehicle Code. The Eighth Circuit first recognized that a "mistake of law that results in a search or seizure . . . must be *objectively* reasonable to avoid running afoul of the Fourth Amendment." *Id.* at 1001. And the following factors are relevant to determining the reasonableness of an officer's mistake of law: drafting history; prior enforcement; police training; previous judicial interpretations; and, state customs. *Id.* Because the Code provision at issue was "counterintuitive and confusing," the Eighth Circuit ultimately held that the officer's mistake of law was

_____

(. . . continued)

Although the Eighth Circuit has taken the minority position, it is not alone in this view. *See United States v. Southerland*, 486 F.3d 1355 (D.C. Cir. 2007). *See also Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998); *People v. Teresinski*, 30 Cal.3d 822, 640 P.3d 753, 180 Cal.Rptr. 617 (1982); *People v. Glick*, 203 Cal.App.3d 796, 250 Cal.Rptr. 315 (1988); *Stafford v. State*, 284 Ga. 773, 671 S.E.2d 484 (2008); *State v. McCarthy*, 133 Idaho 119, 982 P.2d 954 (1999); *Harrison v. State*, 800 So.2d 1134 (Miss. 2001); *DeChene v. Smallwood*, 226 Va. 475, 311 S.E.2d 749 (1984).

objectively reasonable. *Id.* The Eighth Circuit therefore concluded that the stop was supported by sufficient cause and affirmed Martin's conviction. *Id.* at 1002-03.

[¶17.] The Eighth Circuit again considered the effect of an officer's mistake of law on the validity of a traffic stop in *United States v. Washington*, 455 F.3d 824 (2006). An officer stopped Washington because the windshield on his vehicle was cracked. A subsequent search of the car revealed a firearm under the passenger seat. Washington challenged the stop, arguing that a cracked windshield did not violate Nebraska law. The Eighth Circuit noted:

> The concept of an objectively reasonable mistake of law cannot be . . . unmoored from actual legal authority. Where there is a basis in state law for an officer's action and some ambiguity or state custom that caused the officer to make the mistake, it may be objectively reasonable. However, in the absence of such evidence, officers cannot act upon misunderstandings of clear statutes or, worse yet, their own notions of what the law ought to be. Officers have broad authority to stop vehicles for any traffic violation, regardless of how minor, but they must have a legal justification for the stop that is grounded in the state's law.

*Id.* at 828 (internal citations omitted). The Eighth Circuit ultimately concluded that the officer's understanding of Nebraska law was not objectively reasonable. *Id.* As a result, the State failed to establish sufficient cause to stop Washington. *Id.*

[¶18.] This Court reached a similar result in *Webb v. S.D. Dep't of Commerce & Reg.*, 2004 S.D. 63, 680 N.W.2d 661. In *Webb*, an Aberdeen police officer stopped Webb as she was backing her vehicle down a public alley. The officer believed that Webb was violating a city ordinance. On appeal, this Court noted that the officer's belief that Webb was violating the law was not supported by the ordinance's plain language. *Id.* ¶ 10, 680 N.W.2d at 665. Consistent with the Eighth Circuit's caution in *Sanders*, this Court held that the officer's understanding of the law was

- 11 -

not objectively reasonable. *Id.* ¶ 8, 680 N.W.2d at 664. Thus, the stop was not supported by sufficient cause. *Id.* ¶ 10, 680 N.W.2d at 665.

[¶19.] In this case, the trial court followed the Eighth Circuit's approach. After briefly examining the language of SDCL 32-17-7, the trial court turned to the South Dakota Driver's Manual.[3] The Driver's Manual instructs drivers to "[u]se . . . low beams when following another vehicle or when in heavy traffic." The trial court found that "it is customary to dim one's headlights when following another vehicle" and that the failure to do so causes the followed driver "the agony of dazzling lights, which can distract the driver and cause danger on the highway." *See, e.g., Washington*, 455 F.3d at 828 (identifying a state custom or practice as possible evidence that an officer's mistake of law was objectively reasonable). The trial court stated without authority that "the vast majority of drivers believe that they are required to dim in the situation [at issue.]" *See id.* The trial court concluded that Trooper Biehl's mistake of law was objectively reasonable because SDCL 32-17-7 is "counterintuitive and confusing."[4] *See Martin*, 411 F.3d at 1001. The trial court thus denied Wright's motion to suppress.

---

3. This Court takes judicial notice of the South Dakota Driver's Manual. *State v. Machmuller*, 2001 S.D. 82, 630 N.W.2d 495. The Driver's Manual does not have the force of law; it is only instructive.

4. The trial court also concluded that "[b]y failing to dim his headlights after being passed by a highway patrol officer, [Wright] invited the stop of his vehicle, similar to the circumstances in *Herrboldt*, [1999 S.D. 55,] 593 N.W.2d 805." In that case, Justice Sabers, writing for a unanimous court, concluded that the defendant "essentially invited the officers to stop him by honking his horn while driving past them at the scene of an armed robbery. He *intentionally* drew their attention to him. This is a 'stop by invitation.'" *Id.* ¶ 9, 593 N.W.2d at 808 (emphasis added). Because the State presented no

(continued . . .)

[¶20.]     SDCL 32-17-7 clearly provides that a motorist must dim his headlights when he passes another vehicle, but not when he is passed by another vehicle. *See supra* ¶ 14. Even the trial court concluded that the terms "meet" and "overtake" used in SDCL 32-17-7 have "clearly definable meanings and are not confusing." Although the language of the statute may surprise many drivers, this fact is insufficient to create a violation that the Legislature has not established. *See Miller*, 146 F.3d at 279; *DeGasso*, 369 F.3d at 1150. Custom or practice does not counter the clear language of SDCL 32-17-7.

[¶21.]     This case is thus more analogous to *Webb* and *Washington* than *Martin*. Trooper Biehl may have believed in good faith that Wright violated SDCL 32-17-7, "[b]ut his *subjective* good faith is not sufficient to justify the stop[.]" *Martin*, 411 F.3d at 1001. "[O]fficers have an obligation to understand the laws that they are entrusted with enforcing, at least to a level that is objectively reasonable." *Id.* "Any mistake of law that results in a search or seizure, therefore, must be *objectively* reasonable to avoid running afoul of the Fourth Amendment." *Id.* Trooper Biehl acted upon a mistake concerning a clear and unambiguous statute. Given the clear and unambiguous language of SDCL 32-17-7, Trooper Biehl's mistake of law was not objectively reasonable. Consequently, the trial court erred by denying Wright's motion to suppress the evidence discovered during the stop and subsequent search of his vehicle.

---

(. . . continued)

 evidence that Wright intentionally drew Trooper Biehl's attention to him by failing to dim his headlights, *Herrboldt* is not applicable to this case.

[¶22.]　　　Reversed.

[¶23.]　　　GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and

MEIERHENRY, Justices, concur.