#27450-r-SLZ

**2016 S.D. 58**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellant,

    v.

APOLINAR LERMA,                    Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOSEPH NEILES
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

JARED TIDEMANN
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
        and appellant.


JASON R. ADAMS of
Tschetter & Adams Law Office, PC
Sioux Falls, South Dakota                    Attorneys for defendant
        and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 16, 2016
REASSIGNED
ON JULY 6, 2016
OPINION FILED **08/17/16**

#27450

ZINTER, Justice (on reassignment).

[¶1.] A police officer initiated an investigatory stop of a vehicle because the vehicle's left brake light was not working. The stop led to the arrest of the driver for driving under the influence of alcohol. The driver moved to suppress evidence obtained during the stop. He argued that the officer did not have reasonable suspicion to initiate the stop because the broken brake light did not constitute a violation of law. In the driver's view, there was no violation of law because the relevant statute only required two working brake lights and his vehicle's right and top-center brake lights were working. The circuit court agreed. The court also ruled that the officer's belief—that South Dakota law required a working left and right brake light—was objectively unreasonable. The court granted the driver's motion to suppress. We reverse and remand.

*Facts and Procedural History*

[¶2.] On April 29, 2014, Sioux Falls Police Officer Brian Wassenaar initiated a traffic stop of Apolinar Lerma's vehicle because the left brake light did not illuminate when Lerma stopped at a stop sign. Lerma's 2004 Hyundai Sonata was equipped with three rear brake lights—one light on each side and one center light mounted above the vehicle's trunk behind the back windshield. Although the left brake light did not illuminate, the right and center brake lights were operating properly.

[¶3.] After stopping the vehicle, Officer Wassenaar observed indicia of alcohol consumption, and he suspected that Lerma was driving under the influence. Lerma performed field sobriety tests, including a preliminary breath test that

-1-

indicated his blood alcohol content was 0.182 percent. He was arrested for driving under the influence.

[¶4.] Lerma moved to suppress the evidence obtained during the stop. He argued that the stop violated his Fourth Amendment right to be free from unreasonable seizures because the officer did not have probable cause or reasonable suspicion that Lerma violated the law. More specifically, Lerma contended that SDCL 32-17-8.1 requires only two working brake lights and that his right and center brake lights were working properly. Officer Wassenaar testified at the suppression hearing that he believed South Dakota law required all brake lights equipped on a vehicle to be operational, and additionally, that the inoperative left brake light posed a safety hazard to other vehicles. Lerma, however, argued that the officer's belief regarding the brake light law was mistaken.

[¶5.] The circuit court interpreted SDCL 32-17-8.1 to require only a total of two working brake lights. Because Lerma's vehicle had two working brake lights, the court suppressed the evidence gathered during the stop, concluding that the officer did not have probable cause or reasonable suspicion for the stop. The day after the circuit court issued its decision, the United States Supreme Court decided *Heien v. North Carolina*, ___ U.S. ___, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014). In *Heien*, a police officer initiated a traffic stop on the mistaken belief that a similar North Carolina law required working left and right brake lights. The Supreme Court upheld the seizure, concluding that the officer's mistaken belief was objectively reasonable. *Id.* at ___, 135 S. Ct. at 540. The State moved the circuit court to reconsider in light of *Heien*. The circuit court denied the State's motion,

ruling that it was objectively unreasonable for the officer to believe that Lerma's nonworking brake light constituted a violation of law.

[¶6.] We granted the State's petition for intermediate appeal. On appeal, the State argues that the nonworking brake light constituted a violation of SDCL 32-17-8.1. Alternatively, the State argues that if there was no brake-light violation, the officer had reasonable suspicion for the stop because he reasonably believed that operating a vehicle with a nonworking brake light was a violation of SDCL 32-17-8.1. Whether the officer had reasonable suspicion to initiate the traffic stop is a question of law we review de novo. *Webb v. S.D. Dep't of Commerce & Regulation*, 2004 S.D. 63, ¶ 6, 680 N.W.2d 661, 663.

*Decision*

[¶7.] We agree with the circuit court that SDCL 32-17-8.1 only requires two working brake lights. SDCL 32-17-8.1 provides in relevant part:

> [E]very motor vehicle, trailer, semitrailer, and pole trailer shall be *equipped with two or more* stop lamps . . . . The stop lamp shall be *mounted* on the rear of the vehicle at a height of no more than seventy inches nor less than fifteen inches. The stop lamp shall *display* a red light visible from a distance of not less than three hundred feet to the rear in normal sunlight, except for a moped, which distance shall be not less than one hundred fifty feet. The stop lamp shall be *actuated* upon application of the service (foot) brake which may be incorporated with one or more rear lamps. A violation of this section is a petty offense.

(Emphasis added.) Although there are four brake-light requirements in this statute, it only requires a vehicle to be equipped with two brake lights. Therefore, the most reasonable interpretation is that the Legislature intended the display and actuation requirements to apply only to the two required brake lights.

[¶8.]    Until today, however, an officer in Officer Wassenaar's position could have reasonably read this statute as requiring all originally equipped brake lights to be operational. After all, the Legislature required two brake lights, but it authorized "more." *See id.* Additionally, the statute is confusing in that it enumerates four brake-light requirements in a single provision, but it references some of the requirements in the plural and some in the singular. Therefore, it is not clear whether the Legislature intended the display and actuation requirements to apply only to the statutory minimum ("two") or to all it authorized ("two *or* more"). *See id.* (emphasis added). Because the Legislature authorized "more" than two brake lights in the same section that it set out the display and actuation requirements, one could reasonably conclude that if a vehicle is equipped with brake lights, however many, the equipped brake lights "shall display a red light" and "shall be actuated upon application of the service brake." *See id.* Indeed, the Eighth Circuit Court of Appeals interpreted SDCL 32-17-8.1 this way. *United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005) (citing SDCL 32-17-8.1 as authority for the view that in South Dakota, "*all* brake lights on a vehicle . . . must be in good working order") (emphasis added).[1]

[¶9.]    *Martin* is not the only authority supporting the interpretation that a nonworking side brake light constitutes a traffic violation. In *State v. Anderson*, we specifically held that an inoperative side brake light was an equipment violation

---

1.    Although *Martin* involved a vehicle with only two originally equipped brake lights, the Eighth Circuit did not state that SDCL 32-17-8.1 only required "two" working brake lights. It stated that the statute required "all" brake lights to be in good working order. *Martin*, 411 F.3d at 1001.

*sufficient to justify an investigatory stop.* 359 N.W.2d 887, 889-90 (S.D. 1984). In addition to the statements of law in *Anderson* and *Martin*, SDCL 32-21-27 makes it a misdemeanor to drive a vehicle on a highway "unless the equipment upon the vehicle is in good working order[.]" A reasonably objective officer is bound by such unqualified statements of law. Therefore, the unequivocal statements in *Martin*, *Anderson*, and SDCL 32-21-27 must be considered in support of finding it objectively reasonable for an officer to conclude that a nonworking side brake light constitutes a traffic violation sufficient to justify an investigatory stop. *See State v. Wright*, 2010 S.D. 91, ¶ 16, 791 N.W.2d 791, 797 (noting that "previous judicial interpretations" are a relevant factor in determining the reasonableness of an officer's mistake of law).

[¶10.]     Today, in a case of first impression, we construe a confusing statute. And our decision—that all originally equipped brake lights need not display red light and need not be actuated by the brake pedal—is counterintuitive: it will certainly surprise many people. These factors also weigh in favor of finding that the officer made a reasonable mistake of law. As the Eighth Circuit held, even if a judge determines that the "plain language" of a statute technically requires a particular number of brake lights, a counterintuitive and confusing law may render an officer's contrary interpretation reasonable. *Martin*, 411 F.3d at 1001; *see also Heien*, ___ U.S. at ___, 135 S. Ct. at 540 (indicating that a statute that has never been construed by an appellate court can contribute to finding a mistaken interpretation reasonable); *State v. Houghton*, 868 N.W.2d 143, 158 (Wis. 2015)

(noting that the fact "the statute has never been interpreted before weighs in favor of" finding a mistake of law reasonable).

[¶11.] We conclude that it was objectively reasonable for an officer in the position of Officer Wassenaar to believe that Lerma's inoperative left brake light constituted a violation of law.[2] As the Eighth Circuit concluded in applying the reasonably-objective-officer test to another ambiguous law that spoke to brake-light requirements in both the singular and plural: "[A] close textual analysis might explain the use of the plural in the heading and second sentence, while still making sense of a singular requirement in the first sentence, but we think the level of

---

2. The dissent relies on Officer Wassenaar's understanding and belief regarding a specific brake-light statute to support its view that his mistake of law was unreasonable. *See infra* ¶ 15 (citing *Wright*, 2010 S.D. 91, ¶¶ 13-14, 791 N.W.2d at 791, for the proposition that the reasonableness of the stop may be determined "only upon the law that the officer believed justified the stop"); *see infra* ¶ 19 (citing *Wright*, 2010 S.D. 91, ¶ 20, 791 N.W.2d at 799, for the proposition that the officer's belief was relevant to establish that he did not rely on custom to make the stop). But here, there has never been *any claim* that the mistake was based on custom; and after our decision in *Wright*, the Supreme Court made it clear that Officer Wassenaar's subjective understanding is irrelevant. The question is whether it was objectively reasonable for an officer in his position to believe that a nonworking side brake light was a violation of law. *See Heien*, ___ U.S. at ___, 135 S. Ct. at 539 ("We do not examine the subjective understanding of the particular officer involved."). The dissent also fails to address the ambiguity created by the fact that although SDCL 32-21-8.1 contains four brake-light requirements, some are imposed in the singular and some in the plural. Finally, the dissent misunderstands the import of *Martin*, *Anderson*, and SDCL 32-21-27. The point of those authorities is that in addition to the ambiguity of SDCL 32-17-8.1, each authority provided "a basis in state law" for the officer's action. *See Wright*, 2010 S.D. 91, ¶ 20, 791 N.W.2d at 799. It matters not that there might be some technical argument to distinguish them today. The point is that statements of law contained therein are unequivocal and they stood unquestioned at the time of the stop. Therefore, each of those authorities provided independent bases in state law for an "objective" officer's stop at the time it occurred.

clarity falls short of that required to declare [the officer's] belief and actions objectively unreasonable . . . ." *Martin*, 411 F.3d at 1001-02. Additionally, both *Anderson* and SDCL 32-21-27 provided independent bases for the stop. Because Officer Wassenaar's mistake of law was objectively reasonable, he had the suspicion necessary to render the traffic stop reasonable under the Fourth Amendment. *See Heien*, ___ U.S. at ___, 135 S. Ct. at 540.

[¶12.] Reversed and remanded.

[¶13.] GILBERTSON, Chief Justice, and KERN, Justice, concur.

[¶14.] WILBUR and SEVERSON, Justices, concur in part and dissent in part.

WILBUR, Justice (concurring in part and dissenting in part).

[¶15.] I agree that SDCL 32-17-8.1 requires only two working stop lamps. I disagree that the fact the Legislature authorized vehicles to have more than two stop lamps means it was objectively reasonable for Officer Wassenaar to mistakenly conclude that "all originally equipped brake lights [need] to be operational." *See supra* Majority Opinion ¶ 8. Officer Wassenaar did not stop Lerma's vehicle because he believed Lerma violated SDCL 32-21-27 by failing to have all equipment on the vehicle in good working order—he stopped Lerma for a violation of SDCL 32-17-8.1. Under *State v. Wright*, the interplay between SDCL 32-21-27 and SDCL 32-17-8.1 would have no bearing on this Court's examination of *Officer Wassenaar's* objectively reasonable mistake of law. *See* 2010 S.D. 91, ¶¶ 13-14, 791 N.W.2d 791, 795-96 (examining the basis for the stop only upon the law that the officer believed

justified the stop and rejecting the circuit court's analysis beyond that); *United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005) (the question is not whether defendant actually violated the law). So, even if the majority opinion is correct that *State v. Anderson* stands for the proposition that a nonfunctioning side brake light is a violation of SDCL 32-21-27, the determinative question in this case is whether it was objectively reasonable for Officer Wassenaar to believe Lerma violated SDCL 32-17-8.1.[3] *See Anderson*, 359 N.W.2d 887 (S.D. 1984).

[¶16.] According to the Supreme Court, "[t]he Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable." *Heien v. North Carolina*, ___ U.S. ___, ___, 135 S. Ct. 530, 539, 190 L. Ed. 2d 475 (2014). In *Heien*, the Court also acknowledged the well-known maxim, "Ignorance of the law is no excuse," and that it could be "unfair to let police officers get away with mistakes of law when the citizenry is accorded no such leeway." *Id.* at ____, 135 S. Ct. at 540. "But just because mistakes of law cannot justify either the imposition or the avoidance of criminal liability, it does not follow that they cannot justify an investigatory stop." *Id.* Therefore, to justify an investigatory stop, Officer Wassenaar's mistake of law must be objectively reasonable.

---

3. *Anderson* is further unsupportive because the issue in *Anderson* was not whether a side brake light is equipment. 359 N.W.2d at 889-90. The issue concerned the officer's reasonable suspicion that Anderson was under the influence and the officer's probable cause to arrest Anderson. In answering the question, this Court did not analyze whether a side brake light is equipment or whether a nonworking brake light is a violation of SDCL 32-21-27. The Court just noted the reasons the officer stopped Anderson.

[¶17.]      In *Wright*, we quoted the Eighth Circuit Court of Appeals:

> The concept of an objectively reasonable mistake of law cannot
> be . . . unmoored from actual legal authority.  Where there is a
> basis in state law for an officer's action and some ambiguity or
> state custom that caused the officer to make the mistake, it may
> be objectively reasonable.  However, in the absence of such
> evidence, officers cannot act upon misunderstandings of clear
> statutes or, worse yet, their own notions of what the law ought
> to be.  Officers have broad authority to stop vehicles for any
> traffic violation, regardless of how minor, but they must have a
> legal justification for the stop that is grounded in the state's law.

2010 S.D. 91, ¶ 17, 791 N.W.2d at 798 (quoting *United States v. Washington*, 455 F.3d 824, 828 (8th Cir. 2006)).  We also found instructive *Martin*, 411 F.3d at 1001, for the notion that a "counterintuitive and confusing" code provision can support a finding that the officer's mistake of law was objectively reasonable.[4] *Wright*, 2010 S.D. 91, ¶ 16, 791 N.W.2d at 797.

[¶18.]      Here, there is nothing confusing about SDCL 32-17-8.1.  In fact, neither the majority nor the circuit court engaged in a close textual analysis to explain the meaning of the statute.  *See, e.g.*, *Martin*, 411 F.3d at 1001.  And the statute does not become counterintuitive simply because "it will certainly surprise many people." *See supra* Majority Opinion ¶ 10.  *Wright*, 2010 S.D. 91, ¶ 20, 791

---

4.      The Eighth Circuit Court of Appeals referred to SDCL 32-17-8.1 as a requirement that "all brake lights on a vehicle . . . must be in good working order." *Martin*, 411 F.3d at 1001.  The court made this statement in regard to "brake lights on a vehicle like Martin's[.]" *Id.* Martin's vehicle was equipped with two brake lights, not three like Lerma's.  So, contrary to the majority opinion's view of *Martin*, the Eighth Circuit Court of Appeals did not "express[] its statement of law" on whether SDCL 32-17-8.1 requires *more than two* properly functioning brake lights.  *See supra* Majority Opinion ¶ 8 n.1.  In fact, the court did not quote the language of our statute or specifically interpret its text.

N.W.2d at 799 (although the language of a statute may surprise people, a clear and unambiguous statute is not counterintuitive). A statute is counterintuitive when the words in the statute do not make sense absent a close textual analysis. *See, e.g.*, *Martin*, 411 F.3d at 1001 (code provision contained "odd reference[s]"); *Heien*, ___ U.S. at ___, 135 S. Ct. at 540.

[¶19.]    In this case, Officer Wassenaar acted upon a misunderstanding of a clear statute and, arguably, on his own idea of what the law ought to be. This is not to say that Officer Wassenaar's subjective understanding of the law is material. Rather, Officer Wassenaar's testimony is relevant in establishing that he relied on no "state custom that caused [him] to make the mistake[.]" *See Wright*, 2010 S.D. 91, ¶ 17, 791 N.W.2d at 798 (quoting *Washington*, 455 F.3d at 828). At the suppression hearing, Officer Wassenaar admitted that SDCL 32-17-8.1 does not mandate where the stop lamps be placed on the rear of the vehicle. He testified, however, that he looks for illuminated brake lights on the left and right rear. He "know[s] some consider [the center lamp] a stop lamp and others consider it an auxiliary lamp[.]" He explained that "our department's head talks about it and there's different views on that," but to Officer Wassenaar, the right and left rear stop lamps must function properly.

[¶20.]    As the court stated in *Martin*, "[O]fficers have an obligation to understand the laws that they are entrusted with enforcing, at least to a level that is objectively reasonable." 411 F.3d at 1001. Because Officer Wassenaar acted upon a mistake concerning a clear and unambiguous statute, Officer Wassenaar's mistake of law was not objectively reasonable, and I respectfully dissent.

[¶21.]        SEVERSON, Justice, joins this special writing.