## A00A1241. HENSLEY et al. v. HENRY.
### (541 SE2d 398)

PHIPPS, Judge.

A jury determined that William Henry was entitled to a private way by necessity over land owned by Augustine Hensley, Jeff Hensley, and Linda Weaver. On appeal, the Hensleys and Weaver claim that (1) the evidence did not establish a private way by necessity; (2) the compensation awarded to them was insufficient; (3) the court erred by denying a motion for mistrial based on an improper jury view; and (4) the court erred by allowing two jurors to testify orally and impeach the verdict. We disagree and affirm.

Henry owns 76 acres of land in Murray County that he inherited from his mother in 1987. She had inherited the property from her father in 1978. Henry's mother had used Jonas Road (located on land owned by the Jonas family) exclusively to access the property. When Henry first obtained the property, he also used Jonas Road for access. The only other established road that accesses the property is a field road known as Weaver Road.

In 1993, Henry was denied access to Jonas Road. He sued to regain access. Weaver intervened in that action, seeking to preclude Henry from gaining access to Weaver Road if he was prohibited from using Jonas Road. The trial court ruled that Henry was precluded from using Jonas Road but had an easement over Weaver Road. Weaver appealed to this court, and we held that Henry had failed to prove that he had a prescriptive easement over Jonas Road, that the easement his mother had been given to use Weaver Road was extinguished by the terms of her father's will, and that he had abandoned

any existing right he may have had to use Weaver Road.[1] In a separate lawsuit, Henry again sought access to Jonas Road by claiming a private way by necessity. The trial court denied Henry's claim and suggested that Weaver Road "remains a viable physical alternative."

Henry was given permission to use Weaver Road for a brief time to harvest hay in one of his fields. During that time, one of Henry's sons threatened Augustine Hensley's 88-year-old father with physical harm, someone poisoned his dog with antifreeze, and beer cans were scattered on the road. There was no evidence that Henry was the cause of these incidents, but they ceased when permission to use the road was withdrawn.

Henry filed an action against the Hensleys and Weaver to obtain a private way by necessity over Weaver Road. The access Henry sought came within approximately 25 feet of the front door of the house occupied by Augustine Hensley's elderly parents. Her mother has only one lung and is severely affected by dust and fumes from tractors or other vehicles.

Henry hired a real estate appraiser to appraise an easement that would allow him to use Weaver Road to access his property. Without actually viewing the property, the appraiser valued the easement at $2,300.

The Hensleys and Weaver hired their own real estate appraiser, who valued the easement at $9,200. The appraiser valued the cost of improvements to the road that he deemed necessary to maintain it at $6,440. He also determined that the value of the houses on either side of the road would be decreased by $5,000 each if the private way was granted, making the total value of the property sought by Henry equal to $25,600.

At trial, James Wilson, a surveyor familiar with the area, testified that Weaver Road was the only reasonable access to Henry's property, other than Jonas Road. He admitted that there were several other routes to the Henry property that were not existing roads.

The Hensleys and Weaver presented evidence that the private way sought by Henry would be accessible only six months of the year because the creek he would have to cross becomes impassable, even with a tractor, for the remainder of the year. Henry responded that he would "just have to deal with the creek." The Hensleys and Weaver also presented evidence of alternate routes to the Henry property. One route would not require crossing a creek, but would require that a road be built across land belonging to the Jonas family. The other potential route would be shorter than the Weaver Road access, but would require crossing the same creek at a deeper point

---

[1] *Weaver v. Henry*, 222 Ga. App. 103, 104-106 (2), (3) (b) (473 SE2d 495) (1996).

over property owned by the Hicks family.

The jury determined that the private way over Weaver Road was both necessary and reasonable, awarded Henry a 20-foot easement across the lands of the Hensleys and Weaver, and decided that Henry should pay $6,000 as just and adequate compensation for the easement. The jury altered the route of the private way so that it did not go in front of the house occupied by Augustine Hensley's parents.

1. The Hensleys and Weaver contend that the evidence did not establish a private way by necessity over Weaver Road because it is flooded six months of the year and because two alternate routes exist.

We review this claim under the "any evidence" rule and must construe the evidence in favor of upholding the verdict.[2] We must affirm a jury's verdict that has the approval of the trial court if there is any evidence to support it because " 'the jurors are the sole and exclusive judges of the weight and credit given the evidence.' "[3]

Pursuant to OCGA § 44-9-40 (a), the superior court has jurisdiction to grant private ways to individuals to go to and from their property. In order to prove the necessity of a private way, OCGA § 44-9-40 (b) requires the condemnor to show that he has no reasonable means of access to his property.[4] Where the condemnor proves that he has *no* access to his property, i.e., that it is landlocked, he makes out a prima facie case of necessity under the statute.[5] The burden then shifts to the condemnee to prove that the condemnor has a reasonable means of access to the property.[6]

Henry presented some evidence that he was landlocked and had no access to his property. Augustine Hensley also testified that Henry was landlocked and had no way to get to his property. Henry therefore made out a prima facie case of necessity.

The burden then shifted to the Hensleys and Weaver to show that Henry had a reasonable means of access to the property. Although they did introduce evidence of two other potential routes to the Henry property, one would require construction of a new road and the other would require crossing the same creek that Weaver Road crosses at a deeper point. We find that there was at least some evidence upon which the jury could conclude that the Weaver Road access was the only reasonable access to the property. The fact that access to the road may be difficult when the creek rises is a matter that Henry has testified he is willing to address and is not sufficient

[2] *Cohen v. Lowe Aviation Co.*, 221 Ga. App. 259, 260 (1) (470 SE2d 813) (1996).
[3] (Citation omitted.) Id.
[4] *Kellett v. Salter*, 244 Ga. 601, 602 (1) (261 SE2d 597) (1979).
[5] *Intl. Paper Realty Corp. v. Miller*, 255 Ga. 676, 677 (341 SE2d 445) (1986).
[6] Id.

reason to deny him access to the road.

Although not set forth as a separate claim of error, we note the concern of the Hensleys and Weaver that Henry's use of their property during the wet seasons may cause damage to the road. Pursuant to OCGA § 44-9-45, Henry or his successor in title must maintain the private way and keep it open and in good repair. Failure to do so for a period of one year will cause title to the private way to revert back to the Hensleys and Weaver.

2. The Hensleys and Weaver claim that the compensation awarded by the jury was inadequate and against the weight of the evidence. We review this claim under the "any evidence" rule set forth above.[7]

The parties presented expert testimony as to the value of the easement, ranging from $2,300 to $9,200. The expert for the Hensleys and Weaver added additional damages, which he testified resulted in a total value of $25,600.

Expert testimony is intended to aid the jury in reaching the correct conclusion on a particular issue, but the jury is not bound by the expert's opinion and is entitled to give the testimony such credence as it deems appropriate.[8] The jury here was so instructed and may have decided that neither expert's opinion was an accurate estimate of the value of the easement. We find that the jury's award of $6,000 as the value of the easement was within the range of the evidence.

3. During jury deliberations, the jury requested an opportunity to view the property at issue. After the judge conferred with counsel and everyone agreed to the jury view, the jurors, the judge, all counsel, a bailiff and the court reporter boarded a bus and visited the property discussed during the trial.

The Hensleys and Weaver moved for a mistrial after returning from the jury view, claiming that it had allowed the jury to gather evidence on their own and that it was prejudicial because the jurors exited the bus to view the Weaver Road route but did not do so for the alternate routes they had proposed. They also noted that the jurors had had private discussions about one of the alternate routes. The judge denied the motion, explaining that everyone had agreed to the jury view, no one had objected during the jury view despite the availability of the court reporter, the bailiff had been with the jurors at all times, they had not obtained permission from the landowners of the alternate routes to go on their property, and the view had been helpful to the jury in arriving at a decision.

The Hensleys and Weaver claim that the jury view was not con-

---

[7] *Cohen*, supra.
[8] *Hambrick v. Makuch*, 228 Ga. App. 1, 3 (2) (b) (491 SE2d 71) (1997).

trolled and that the jurors were allowed to gather additional evidence. They also take issue with the court's failure to issue curative instructions regarding the view and the private discussions among the jurors. Finally, they complain about the court's failure to instruct the jury that a view is not evidence.

There are at least two types of jury views. The "evidentiary view" is designed to allow the jury to view evidence introduced in the case that is too large or affixed and cannot be brought into the courtroom.[9] The "scene view" allows the jury to view the premises relevant to the case to better understand the testimony and evidence introduced in court.[10] A view of the scene is not evidence in the case.[11]

The jury view here was a scene view, which merely allowed the well-supervised jurors to see the property discussed during trial and depicted in photographs introduced as evidence, a substantial number of which were devoted to the Weaver Road access. We find no evidence or danger of "the intentional gathering of extrajudicial evidence, highly prejudicial to [the Hensleys and Weaver], by members of the jury and the communication of that information to the other jurors in the closed jury room."[12]

We find no error in the trial court's failure to issue curative instructions after the motion for mistrial. Initially, we note that counsel never requested curative instructions. Because we find no error in the manner in which the jury view was conducted, curative instructions were not necessary with respect to the jury's decision to leave the bus to view the Weaver Road access.

With respect to the communications among the jurors, we find that any objection has been waived. Despite the presence of the court reporter, counsel failed to make any objection to the discussion during the jury view and never requested curative instructions at any time.[13]

Finally, the Hensleys and Weaver never requested that the court instruct the jury that the jury view was not evidence. The trial court had no duty, on its own motion, to instruct the jury that the view was not to be considered as evidence.[14]

4. After the jury's verdict and the court's entry of judgment,

---

[9] *Jordan v. State*, 247 Ga. 328, 345 (9) (276 SE2d 224) (1981).

[10] Id.

[11] Id.

[12] (Citations and punctuation omitted.) *Forney v. State*, 255 Ga. 316, 320 (7) (338 SE2d 252) (1986).

[13] *Sims v. Majors*, 178 Ga. App. 679, 681 (3) (344 SE2d 501) (1986) (objection to private discussions among jurors during jury view waived when not made promptly where both counsel were present at jury view).

[14] *Harper v. State*, 182 Ga. App. 760, 761 (2) (357 SE2d 117) (1987); *Kilgore v. State*, 251 Ga. 291, 303 (6) (305 SE2d 82) (1983).

Henry filed a motion to amend the judgment based on his assertion that the judgment did not accurately describe the 20-foot easement awarded by the jury. Henry claimed that the judgment reduced the easement to ten to twelve feet, based on the survey of the road. After conducting a hearing and allowing testimony from two of the jurors, the court granted Henry's motion and amended the judgment to provide for a 20-foot easement from beginning to end.

The Hensleys and Weaver claim that the jurors' testimony improperly impeached their verdict, contrary to the rule set forth in OCGA § 9-10-9 that affidavits of jurors may be taken to sustain but not to impeach their verdict. The prohibition against impeaching a verdict extends to oral testimony offered at a hearing.[15] But a juror's affidavit (or testimony) will be allowed to explain a verdict in an attempt to sustain it.[16]

Here, the jury verdict awarded Henry "a private way across the lands of the defendants with an easement 20 feet in width, following a course as shown on attached endorsements." The attached endorsements included a map diagraming the route of the private way and a description of the route, which also provides for a 20-foot easement. The Hensleys and Weaver rely on language in the description providing that, at one point, the easement shall follow the road as shown on the plat. Because the road as shown on the plat is less than 20 feet wide, they contend that the jury intended for the easement to narrow to the same width.

Both jurors testified that they intended for the entire easement to be 20 feet wide, and one stated that he did not know the width of the road as shown on the plat. Based on the language of the verdict and the jurors' consistent testimony, it seems clear that the jury intended to provide for a 20-foot easement from start to finish. The trial court properly considered the jurors' testimony and amended the judgment accordingly.

*Judgment affirmed. Johnson, C. J., and Smith, P. J., concur.*

DECIDED OCTOBER 17, 2000.

*Joseph E. Willard, Jr.*, for appellants.
*Little, Bates & Kelehear, L. Stephen Kelehear, Michael J. Tuck,* for appellee.

---

[15] *PIE Nationwide v. Prickett*, 189 Ga. App. 77 (374 SE2d 837) (1988).
[16] *Perryman v. Rosenbaum*, 205 Ga. App. 784, 785-786 (2) (a) (423 SE2d 673) (1992).