#27886-a-GAS

2017 S.D. 13

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

MATTHEW LAMAR HOPKINS,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
HUTCHINSON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICK SMITH
Judge

* * * *

MARTY J. JACKLEY
Attorney General

CULLEN P. MCNEECE
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.


KENNETH E. LEHR
Scotland, South Dakota                  Attorney for defendant
                                        and appellant.

* * * *

CONSIDERED ON BRIEFS
MARCH 22, 2017
OPINION FILED 04/12/17

#27886

SEVERSON, Justice

[¶1.] Following a court trial, the circuit court found Matthew Hopkins guilty of driving with .08 percent blood alcohol content. Hopkins also pleaded guilty to a part II information alleging that this was his second driving under the influence offense. On appeal, Hopkins asserts that the circuit court erred when it denied a motion to suppress evidence. We affirm.

## Background

[¶2.] On the evening of September 25, 2015, Officer Wagner was completing paperwork at the Parkston Police Department when she heard a loud vehicle pass by. She looked up from her work and observed a white vehicle traveling at a high rate of speed. She immediately went to her patrol car and tried to use radar to determine the speed of the vehicle but was unsuccessful. The vehicle turned into a gas station and Officer Wagner followed. When she arrived, the vehicle was unoccupied. She entered the gas station and asked the clerk who was driving the white vehicle. The clerk responded that it was the clerk's son and that he was in the bathroom.

[¶3.] When the driver of the vehicle, Matthew Hopkins, exited the bathroom, he had his hands in his pants pockets. Officer Wagner asked that Hopkins remove his hands from his pockets and step outside with her because she had a couple questions for him. Officer Wagner testified that he initially removed his hands from his pockets but then placed them back inside the pockets. She asked him twice to take his hands out of his pockets but he refused. Officer Wagner testified that when she got outside with Hopkins, she told him, "I'm going to put you in cuffs for my

-1-

safety because you continue to put your hands in your pocket. . . . At this point you're just being detained, you're not under arrest." She then frisked him and asked him why he was driving so fast. He responded that he had to get his car to his mother before she finished work. During this encounter, she could smell alcohol. While he was still in handcuffs, she asked him if he had been drinking. He responded that he drank a couple of beers. She then placed him in the back of her car and took his driver's license to run a check. "[E]verything came back okay" so she got him out of the car, took the handcuffs off of him, and asked him to do field sobriety tests. He did not perform well on several tests. Officer Wagner gave him a preliminary breath test that showed a .138 percent blood alcohol content. She placed Hopkins under arrest and read him his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). She also asked if he would consent to a blood draw, which he refused. After obtaining a warrant, a blood draw was performed. Hopkins' blood alcohol content was .162 percent.

[¶4.]     Hopkins was charged with alternative counts of driving under the influence and driving with .08 percent or more by weight of alcohol in his blood. He moved to suppress the statements that he made to law enforcement (that he had been driving and drinking), asserting that he was subject to a custodial interrogation and entitled to being advised of his *Miranda* rights. *See id.* He also sought to suppress all physical evidence obtained by law enforcement alleging it to be "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). After a hearing, the circuit court denied Hopkins' motion to suppress and the case proceeded to a court trial. The court found Hopkins

guilty of driving with .08 percent or more by weight of alcohol in his blood. Hopkins pleaded guilty to a part II information alleging a second offense driving while under the influence. On appeal to this Court, Hopkins alleges that the circuit court erred when it failed to suppress his statements and the physical evidence obtained by law enforcement.

## Standard of Review

[¶5.] "A motion to suppress based on an alleged violation of a constitutionally protected right is a question of law reviewed de novo." *State v. Rademaker*, 2012 S.D. 28, ¶ 7, 813 N.W.2d 174, 176 (quoting *State v. Wright*, 2010 S.D. 91, ¶ 8, 791 N.W.2d 791, 794). "The trial court's factual findings are reviewed under the clearly erroneous standard. Once the facts have been determined, however, the application of a legal standard to those facts is a question of law reviewed de novo. This Court will not be restricted by the trial court's legal rationale." *Id.*

## Analysis

[¶6.] There is no dispute that Hopkins was not advised of his *Miranda* rights prior to the officer asking him why he had been driving so fast and whether he had been drinking. However, only "[i]ndividuals subject to a custodial interrogation are entitled to *Miranda* warnings." *State v. McCahren*, 2016 S.D. 34, ¶ 30, 878 N.W.2d 586, 599. In this case, Hopkins was subjected to an investigatory detention, *i.e.* a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). In the interest of her safety, Officer Wagner secured Hopkins and

performed a search for weapons.∗ The United States Supreme Court has indicated

that normally *Terry* stops will not constitute *Miranda* custody. It has explained:

> Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to "investigate the circumstances that provoke suspicion." "[T]he stop and inquiry must be 'reasonably related in scope to the justification for their initiation.'" Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. *The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda.*

*Berkemer v. McCarty*, 468 U.S. 420, 439-40, 104 S. Ct. 3138, 3150, 82 L. Ed. 2d 317

(1984) (emphasis added) (footnotes omitted) (citations omitted). The Court has

reiterated that "the temporary and relatively nonthreatening detention involved in

a traffic or *Terry* stop does not constitute *Miranda* custody." *Howes v. Fields*, 565

U.S. 499, 510, 132 S. Ct. 1181, 1190, 182 L. Ed. 2d 17 (2012) (quoting *Maryland v.*

*Shatzer*, 559 U.S. 98, 113, 130 S. Ct. 1213, 1224, 175 L. Ed. 2d 1045 (2010)).

[¶7.] Nevertheless, in *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S. Ct.

3138, 3450, 82 L. Ed. 2d 317 (1984)*,* when the Court addressed whether roadside

questioning during routine traffic stops constituted custodial interrogation, it

compared traffic stops to *Terry* stops, explaining:

> [T]he safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a "degree

---

∗      Hopkins does not challenge any aspect of the *Terry* stop.

> associated with formal arrest." If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protection prescribed by Miranda.

(Citations omitted.). Thus, the Court has indicated that we must still analyze *Terry* stops to determine if a detainee was in custody such that *Miranda* rights were necessary. *See also United States v. Martinez*, 462 F.3d 903, 909 (8th Cir. 2006) (rejecting government's claim that "so long as [an] encounter remained a *Terry* stop, no *Miranda* warnings were required.").

[¶8.]　　　To determine whether an individual was in custody we utilize a two part test:

> First, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

*McCahren*, 2016 S.D. 34, ¶ 30, 878 N.W.2d at 599 (quoting *State v. Wright*, 2009 S.D. 51, ¶ 19, 768 N.W.2d 512, 520). The United States Supreme Court has explained that "[r]elevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Howes*, 565 U.S. at 509, 132 S. Ct. at 1189 (citations omitted). "Determining whether an individual's freedom of movement was curtailed, however, is simply the first step in the analysis, not the last. Not all restraints on freedom of movement amount to custody for purposes of *Miranda*." *Id.*

"[T]he freedom-of-movement test identifies only a necessary and not a sufficient condition for *Miranda* custody." *Id.* (quoting *Shatzer*, 559 U.S. at 112, 130 S. Ct. at 1124).

[¶9.]     Hopkins insists that the sole fact that he was handcuffed during the initial questioning means that he was in custody at the time of Officer Wagner's questions. Courts across the country have handled this issue differently. Hopkins cites to two cases where handcuffs have been a deciding factor in determining that a suspect was in custody. *See United States v. Newton*, 369 F.3d 659, 676 (2d Cir. 2004) ("Handcuffs are generally recognized as a hallmark of a formal arrest. . . . Thus, a reasonable person . . . would ordinarily conclude that his detention would not necessarily be temporary or brief and that his movements were now totally under the control of the police[.]"); *Wright v. State*, 766 N.E.2d 1223, 1230 (Ind. Ct. App. 2002) ("[T]he use of handcuffs would cause the reasonable person to feel that one was not free to leave, and that one's freedom of movement was restrained to the degree associated with a formal arrest."). Hopkins also refers us to cases where courts determined that the combination of handcuffs and other circumstances amounted to a suspect being in custody. *See United States v. Smith*, 3 F.3d 1088, 1098 (7th Cir. 1993) (finding suspect was in custody where he "had not been told whether he was under arrest, he was removed from the taxicab in which he was riding, separated from his property and his associates and handcuffed. By the time of his arrest, there were a large number of officers at the scene. . . . Under these circumstances, there was

sufficient curtailment of [suspect's] freedom of action to establish custody for *Miranda* purposes."); *State v. Wilson*, 169 P.3d 1184, 1194-95 (N.M. Ct. App. 2007)("The officer used force in order to fully handcuff Defendant, which caused Defendant to drop to his knees, and then the officer placed Defendant in the back seat of the officer's vehicle. . . . [W]e conclude as a matter of law that a reasonable person in Defendant's position would believe that he was restrained to the degree associated with a formal arrest. . . . Defendant was in *Miranda* custody.").

[¶10.]    Those latter cases, which took the handcuffs into account along with the other circumstances, are consistent with the approach taken by several other courts that have addressed the question. Those courts have explicitly determined that the use of restraints is not determinative. In *Dixon v. Commonwealth*, 613 S.E.2d 398, 399 (Va. 2005), law enforcement responded to a motor vehicle accident and detained a suspect at the scene of the accident. After the suspect was handcuffed, an officer placed the suspect in the front passenger seat of the officer's patrol car and locked the door. *Id.* The officer told the suspect he was not under arrest but was being detained for investigative purposes. *Id.* After verification of the suspects name and birth date, the officer began questioning the suspect about the accident. *Id.* The Virginia Supreme Court determined that under those circumstances, "a reasonable person in [the suspect's] position would have understood that his freedom was being restricted to a degree associated with a formal arrest." *Id.* at 401. The court explained:

> Our conclusion in this regard is influenced most strongly by the *combined* factors of [the suspect] being restrained in handcuffs and being locked in a police patrol car. *While the presence of either of these factors, in the absence of the other, may not result in a curtailment of freedom ordinarily associated with a formal arrest*, the presence of both factors compels the conclusion that a reasonable person subjected to both restraints would conclude that he was in police custody.

*Id.* (emphasis added). Similarly, the Wisconsin Supreme Court has recognized "that the use of handcuffs does not in all cases render a suspect in custody for *Miranda* purposes." *State v. Martin*, 816 N.W.2d 270, 280 (Wis. 2012). The Ninth Circuit has determined the same. *See United States v. Booth*, 669 F.2d 1231, 1236 (9th Cir. 1981) (citing *United States v. Purry*, 545 F.2d 217, 220 (D.C. Cir. 1976)) ("Handcuffing a suspect does not necessarily dictate a finding of custody.").

[¶11.] Handcuffs certainly restricted Hopkins' ability to move during Officer Wagner's simultaneous pat-down and questioning, but the United States Supreme Court has also explained that "[d]etermining whether an individual's freedom of movement was curtailed, however, is simply the first step in the analysis, not the last. Not all restraints on freedom of movement amount to custody for purposes of *Miranda*." *Howes*, 565 U.S. at 509, 132 S. Ct. at 1189. And the Supreme Court's expression of relevant factors to consider includes "the presence or absence of physical restraints during the questioning[,]" which indicates that handcuffs are not dispositive. *See id.* Accordingly, we continue to use our previously expressed test and simply take the handcuffs into consideration when examining the totality of the circumstances surrounding the questioning.

[¶12.] Hopkins was not subject to a custodial interrogation. The encounter took place immediately outside of a gas station, in a public area.

Officer Wagner was the only law enforcement officer present during the encounter. When she placed Hopkins in handcuffs, she informed him that he was not under arrest and that she was securing him for her safety. He indicated that he understood. She testified that Hopkins was in handcuffs for probably three minutes during which she frisked him and placed him in the back of her patrol car while she ran a check on his driver's license. There is no indication how long it took her to frisk him, but it would have been less than those three minutes. It was during that brief frisk that she asked him general questions about his driving and drinking because she had smelled alcohol. At that point in time and under these circumstances, we conclude that a reasonable person would have understood that the detention would be temporary and brief as the officer checked for weapons to ensure her safety.

[¶13.]    Officer Wagner did eventually place Hopkins in her locked patrol car while he was still handcuffed. However, we need not determine whether the additional factor of being in the patrol car would amount to custody in this case. It does not appear that Officer Wagner asked Hopkins any questions or that he made any statements while she verified his identity and ran a check on his driver's license. After the check was complete, she released him from the handcuffs and asked that he perform field sobriety tests. Hopkins does not appear to dispute that at that point in time she had the authority to perform those tests.

[¶14.]    Because Hopkins' constitutional rights were not violated in this case, we need not address his remaining suppression of evidence argument.

## Conclusion

[¶15.] The totality of circumstances surrounding the encounter between Hopkins and Officer Wagner did not amount to a custodial interrogation. Accordingly, the circuit court did not err by denying his motion to suppress any incriminating statements made during the encounter. We affirm.

[¶16.] GILBERTSON, Chief Justice, and ZINTER, WILBUR and KERN, Justices, concur.